UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOE, Individually and on behalf of others similarly situated, | § § § § | |
| Plaintiff, | § § | CIVIL CASE NO. |
| v. | § § § | _____ |
| INTERNATIONAL ASSOCIATION OF EATING DISORDER PROFESSIONALS' FOUNDATION, INC, a California Corporation, BONNIE HARKEN, MATTHEW HARKEN, JOEL JAHRAUS, DENA CABRERA, and RALPH CARSON, | § § § § § § § § § | **CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES** <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | § | |

Comes now, Jane Doe, ("Doe or Plaintiff") Individually and On Behalf of Others Similarly Situated, who files this Class Action Complaint against the International Association of Eating Disorders Professionals Foundation, Inc. ("iaedp"), Bonnie Harken ("Harken"), Matthew Harken ("M. Harken"), Joel Jahraus ("Jahraus"), Dena Cabrera ("Cabrera") and Ralph Carson ("Carson") [or hereinafter referred to collectively as "Defendants"] as follows:

## <u>SUMMARY OF THE ACTION</u>

**1.**    Plaintiff and the Plaintiff Class Members are dues paying members of iaedp and are board certified in eating disorders. Plaintiff and Plaintiff Class Members sustained actual damages because of Defendants' monopoly of a certification process and other fraudulent conduct.

**2.**    Defendant Harken took over *iaedp* in 2002.    During the following 21 years, Defendant Harken acquired and then through subterfuge, deceit and through a carefully crafted conspiracy with the other defendants, obtained complete control over *iaedp* and its "independent" iaedp corporate chapters. Defendant Harken's stewardship over iaedp has been marked by ethically questionable and illegal conduct. The purpose of Defendant Harken's illicit conduct was to unjustly enrich herself at the expense of a non-profit organization allegedly dedicated to the research, education and understanding of eating disorders.

**3.**    Defendant Harken has control over all operations of iaedp including iaedp certification[1], its process and maintenance. All board-certified eating disorder specialists are required to maintain their membership in iaedp and to pay annual membership dues to iaedp. In addition, and depending on the type of certification, those who are board certified must also pay annual supervision fees and certification dues and fees. All board-certified specialists are required to attend in person, iaedp's annual symposium held in either Orlando, Florida or Palm Springs, California once every four years. This conduct constitutes an unlawful tying arrangement and violates anti-trust laws.

**4.**    A failure or refusal to pay any of these fees or attend the symposium results in iaedp cancelling or denying iaedp certification.

**5.**    As such, Plaintiff brings this class action proceeding on behalf of herself and on behalf of all persons similarly situated who are or were dues paying members of iaedp and are or were iaedp certified in eating disorders. Plaintiff and the Class Members allege that

---

[1] Certification in the mental health field is usually overseen by an independent organization and is based on input and expertise from collaborative experts. The certification process regarding eating disorders is based strictly on Ms. Harken and iaedp. Therefore, certification will be referred to throughout this Complaint more accurately, as "iaedp certification."

Defendants fraudulently operated iaedp, engaged in acts constituting cronyism, tax evasion, engaged in a civil conspiracy, engaged in fraud through non-disclosure, violated antitrust laws by through an unlawful tying arrangement, and violated the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO").

**6.**     Plaintiff individually and as Class Representative, seek class certification, seek a declaration that Defendants, individually and collectively violated the common laws of Texas and other states, violated federal and state statutes, seek a return of all monies paid by the Class Members for iaedp certification, seek the payment of attorney's fees, treble damages, exemplary damages and for whatever other relief to which Plaintiff and the Plaintiff Class are entitled.

## **PARTIES**

**7.**     Jane Doe is a resident of the State of Connecticut.

**8.**     Defendant iaedp is a 501(c)(3) corporation organized under the laws of the State of California. Pursuant to Fed.R.Civ.P. 4(c)(1) and (2), a summons and this complaint will be served upon iaedp's managing director: Bonnie Harken, 1103 South 5th Street, Pekin, Illinois 61554-4525.

**9.**     Defendant Harken is an individual residing in the State of Illinois. Pursuant to Fed.R.Civ.P. 4(c)(1) and (2), a summons and this complaint will be served upon said defendant at the following address: 1103 South 5th Street, Pekin, Illinois 61554-4525.

**10.**     Defendant M. Harken is an individual residing in the State of Illinois. Pursuant to Fed.R.Civ.P. 4(c)(1) and (2), a summons and this complaint will be served upon said defendant at the following address: 1103 South 5th Street, Pekin, Illinois 61554-4525.

**11.**     Defendant Jahraus is an individual residing in the State of Florida. Pursuant to Fed.R.Civ.P. 4(c)(1) and (2), a summons and this complaint will be served upon said defendant at the following address: 6100 SW 76th Street, South Miami, FL 33143.

**12.**     Defendant Cabrera is an individual residing in the State of Arizona. Pursuant to Fed.R.Civ.P. 4(c)(1) and (2), a summons and this complaint will be served upon said defendant at the following address: 42104 North Venture Drive, Building B, Suite 102, Anthem, Arizona 85086.

**13.**     Defendant Carson is an individual residing in the State of Alabama. Pursuant to Fed.R.Civ.P. 4(c)(1) and (2), a summons and this complaint will be served upon said defendant at the following address: 713 Versailles Drive, Huntsville, Alabama 35803.

## JURISDICTION

**14.**     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this proceeding is a class action lawsuit as defined under 28 U.S.C. § 1332(d)(1)(B), the amount in controversy collectively for the class members exceeds $5,000,000 and at least one member of the Class of Plaintiff is a citizen of states different than all named Defendants.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treaties of the United States. Plaintiff asserts a claim arising under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. This Court has jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367 because the state common law claims alleged herein are so related to the federal claims that they form part of the same case or controversy.

**15.**     Venue is proper in this district pursuant to 42 U.S.C. § 1391(b) because Defendant iaedp actively conducts business in this district; the individual defendants (except

Defendant M. Harken) are all directors on the Board of Directors of the DFW Chapter of iaedp, an organization which has its principal place of business in this district; Defendant iaedp entered into contracts with residents in the Northern District of Texas, to wit: the DFW Chapter of iaedp and its members. Defendant iaedp solicits and receives revenue from residents in the Northern District of Texas; it solicits and requires persons who reside in the Northern District of Texas to attend its annual symposiums and numerous board-certified eating disorder specialists reside in the Northern District of Texas. As such, substantial parts of the events or omissions giving rise to the claims in general and Class Members' causes of action arose in this district.

### **Background Facts**

16.     Eating disorders have the second highest mortality rate among mental illnesses. One person dies every fifty-two (52) minutes as a direct result of eating disorders. Eating disorders are a complex mental illness with biological, genetic and societal components. Research continually grows and gains insight into the risk factors that contribute to this illness. These risk factors thus far are multifactorial and reflect a range of biological, psychological and societal factors, such as genetics, temperament, biology, trauma, and coping mechanisms. Because of the evolving nature of eating disorders, the understanding and utilization of "evidence-based" treatment is paramount and is the best recourse for the growing understanding of the causes and manifestations of this disease.

17.     The complexities and multivarious elements of this illness require that medical and mental health practitioners who wish to specialize in eating disorder treatment receive the best education possible. So too, the process to acquire a certification of expertise in treating eating disorders must be held to the highest standard possible. Establishing and maintaining this highest standard should be overseen and regulated by an independent,

unbiased administrative or private organization free from any financial ties to that standard. Regarding the certification process for treating eating disorders, this type of oversight and regulation does not exist.

18.     There is only one nationally recognized certification credential for eating disorders. This credentialing was generated by, issued by and overseen exclusively by Defendants Harken and iaedp members. In the United States, medical professionals and mental health practitioners who wish to obtain certification in treating eating disorders are first required to obtain and then maintain annual membership in iaedp.

19.     In the past, iaedp's board certified specialist designations included:

- Certified Eating Disorders Specialist (CEDS), which applied to licensed therapists, medical doctors, and nurse practitioners;

- Certified Eating Disorders Registered Dietitian (CEDRD), which applied to registered dietitians;

- Certified Eating Disorders Registered Nurse (CEDRN), which applied to registered nurses, and;

- Certified Eating Disorders Creative Arts Therapist (CEDCAT), which applied to Music, Art, Recreation and Dance/Movement Therapists.

20.     Defendant iaedp eliminated these designations and now just have a general certification designation, Certified Eating Disorder Specialist or "CEDS". The iaedp certification process and program also have undergone a number of other questionable changes.

21.     The certification core course content and exam questions are allegedly overseen by an iaedp committee. The certification committee members review applications to assess if an applicant meets (or exceeds) iaedp's requirements. Providers who qualify for

credentialing do so through one of two routes: Equivalency or Traditional. Each of those two tracks have their own separate study, patient consultation, supervision and demonstrated expertise requirements.

### Certification requires mandatory membership in iaedp and in person attendance at annual symposiums.

**22.**     Iaedp is the only organization offering certification in the care and treatment of eating disorders. As such, iaedp has a complete monopoly pertaining to eating disorder certification, its process and maintenance. All board-certified eating disorder specialists are required to maintain their membership in iaedp and to pay annual membership dues to iaedp. In addition, and depending on the type of certification, those who are board certified must also pay annual supervision fees and membership fees. Annual membership dues are $195.00 but discounts for some members are made available.

**23**.     A failure or refusal to pay any of these fees results in iaedp cancelling or denying iaedp certification.

**24.**     To maintain iaedp certification, eating disorder professionals are required to attend, in person, iaedp's annual symposium once every four (4) years. These symposiums alternate between a resort location in Palm Springs, California and a resort location in Orlando, Florida. The symposium cost alone is approximately $1,000.00. Hotel costs, travel costs and all other costs and charges incurred are in addition to the basic symposium costs.

**25.**     Since membership fees and symposium fees are not reasonably related nor an integral part of iaedp certification, the mandatory inclusion of same is merely to increase the coffers of iaedp and enrichen its managing director, Defendant Harken.

Iaedp's Certification Program is designed to be a revenue generating program for
Defendant Harken

**26.**    iaedp is a deeply troubled organization solely owned and operated by Defendant Harken. Defendant Harken's stewardship over iaedp has been continually marked by ethically questionable and illegal conduct.

**27.**    Defendant Harken made material misrepresentations on *iaedp's* Form 990 tax filings from 2017 to present. To this end, Defendant Harken represented that she works an alleged 40.00 hours per week, is listed as an officer, but takes no salary[2]. In addition, her dissolved, wholly owned management company, Crossroads Programs, Inc. purportedly has a consulting agreement with *iaedp* and is paid a base income of $156,000.00. However, Defendant Harken admitted through counsel that her corporation was, and has been dissolved since June 6, 2016. Defendant Harken's explanation was that she in fact, was operating as a "sole proprietor" and independent contractor. Therefore, iaedp's Form 990 tax returns are incorrect beginning in 2017. But the troubles and issues of Defendants iaedp and Harken are much more expansive.

Defendants Harken and iaedp violate California tax laws.

**28.**    Iaedp was organized in the State of California in 1996. According to iaedp's records, it has ZERO full time employees and has ZERO paid employees. No officer, employee or director has any reportable compensation from iaedp. However, Defendant Harken maintains that she is an independent contractor of iaedp and not an employee. And yet, the facts do not support Defendant Harken's sworn statement.

---

[2] On iaedp's latest Form 990 tax filing, Defendant Harken corrected this hourly number to 32 hours instead of 40 hours.

**29.**     The State of California utilizes the "ABC test" to determine if workers are employees or independent contractors. California law presumes that a worker is an employee and not an independent contractor. The employer (in this case, iaedp) has the burden to prove a worker is in fact, an independent contractor.

**30.**     Under the ABC test, a worker is considered an employee and not an independent contractor, unless the employer satisfies all three of the following conditions:

- The worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact;

- The worker performs work that is outside the usual course of the hiring entity's business; and

- The worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

**31.**     Iaedp cannot satisfy even one of these criteria. Assuming *arguendo* that Defendant Harken was an independent contractor, she is performing all substantive work for *iaedp*. If allowable, that would result in a Board of Directors having no power or authority over the only person acting in a full-time capacity. Further, to whom would this independent contractor, this dissolved corporation or sole proprietor or individual report and who would oversee her work?

**32.**     Defendant Harken, her dissolved corporation and sole proprietorship cannot show under any circumstances that she was performing work outside the usual course of business of an eating disorder organization. To the contrary.

**33.**     On iaedp's tax forms, Defendant Harken committed perjury and misrepresented Crossroad's status, misrepresented its existence, misrepresented that she was not an employee and illegally operated in the State of California. In iaedp's tax filing in California

it reports that iaedp has zero paid employees and has not withheld any state income or any other related taxes. That is a significant problem.

34.    California requires employers to withhold state income tax from wages paid to employees and in most cases, to independent contractors. There are also three other state payroll taxes: State disability insurance, which are withheld from employees' wages; Unemployment insurance, which the employer pays; and Employment training tax, which the employer also pays. Neither Iaedp nor Defendant Harken paid any of those taxes.

35.    When the California Labor Board conducts its investigation into iaedp, in all reasonable likelihood, it will assess past due taxes, penalties and interest from both iaedp and Defendant Harken. With iaedp's limited resources, this will result in iaedp being forced to cease operations, including the certification program. In addition, under the Employment Taxes and the Trust Fund Recovery Penalty, iaedp's Board of Directors could have joint and several liability for any taxes, penalties and interest due.

36.    In order to generate revenue, which such revenue was intended to only benefit Defendant Harken, Defendant Harken committed perjury, committed tax evasion by knowingly and intentionally classifying herself as an independent contractor, accepted revenue from a non-profit organization to benefit her for profit entity and operated a certification program that violates antitrust laws through an unlawful tying arrangement.

37.    Defendant Harken's iron fisted control over iaedp includes incorporation of at least twenty-nine (29) allegedly separate, "independent" iaedp corporate chapters in the State of Illinois. However, the only nexus these "independent" iaedp corporate chapters have

with the State of Illinois is that Defendant Harken resides in Pekin, Illinois[3]. In addition, Defendant Harken is on the Board of Directors for each of these 29 "independent" iaedp corporate chapters. The only other members of the Board of Directors of the "independent" iaedp corporate chapters are her co-Defendants Jahraus, Cabrera and Carson. Despite the fact that Defendant Cabrera is a resident of the State of Arizona, Defendant Jahraus is a resident of the State of Florida and Defendant Carson is a resident of the State of Alabama, the "independent" iaedp corporate chapter filings with the Illinois Secretary of State list these defendants' addresses as: P.O. Box 1295, Pekin, Illinois 6155.

**38.**     This P.O. Box is the principal business address for Defendant iaedp. Defendant Harken and Defendant M. Harken have custody and control over this post office box. By having exclusive control over the boards of directors for these "independent" iaedp corporate chapters, Defendants maintain sole control over the manner in which iaedp, as a state and national organization operates.

**39.**     This sole control with no oversight has resulted in grossly negligent oversight of the operations of the "independent" iaedp corporate chapters. Numerous mandatory filings and fees have not been paid resulting in several "independent" iaedp corporate chapters being placed in inactive or suspended status, including but not limited to:

A.     The California Attorney General listed Defendant *iaedp* as delinquent beginning on February 15, 2019. California law is strict in that delinquent organizations "may not operate or solicit for charitable purposes." "An organization that is delinquent, suspended or revoked is not in good standing and is prohibited from engaging in conduct

---

[3] Defendant iaedp was organized under the laws of the State of California in 1996.

for which registration is required, including soliciting or disbursing charitable funds."
Defendants Harken and iaedp intentionally violated these laws;

B.      Defendants Harken, Carson, Cabrera and Jahraus as the board of directors
of the "independent" corporate chapters located in San Francisco, Los Angeles and Orange
County were grossly negligent in permitting those three chapters to go into "Franchise Tax
Board" (FTB) suspension status, a status which those chapters still maintain. As FTB
suspended organizations, those three chapters are not allowed to conduct any legal
business, do not maintain the right to use their business name and have had their tax-
exempt status revoked in the State of California;

C.      The Puget Sound (State of Washington) Chapter was placed in an inactive
status once in 2020, once in 2021 and once in 2022;

D.      The Southwest Washington Chapter was placed in an inactive status once in
2020 and again in 2022;

E.      The San Diego Chapter had its status placed in suspension pending status in
2021;

F.      The Maricopa County (Phoenix) Chapter was placed in a pending inactive
status in 2021. In addition, in filings with the Arizona Secretary of State, this Chapter listed
a director who is not on the Board of Directors;

G.      The South Carolina Chapter was never registered as a foreign organization
authorized to conduct business in South Carolina;

H.      The Rhode Island Chapter was placed in a delinquency pending status in
2022;

I.      The Atlanta Chapter was never registered as a foreign organization in the
State of Georgia and as such, does not have authority to conduct business in Georgia.

**40.**    To cover up her illicit business practices, Defendant Harken has not authorized nor allowed any CPA firm to conduct an independent audited financial statement for iaedp in over ten (10) years and upon information and belief, at no time since Defendant Harken assumed dominion and control over iaedp.

**41.**    Further, Defendants Harken and iaedp violated, and continue to violate IRS rules and regulations pertaining to disclosure of financial and governing documents to the general public. On iaedp's Form 990 tax filings, the following language appears:

19. Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

Section O states:

| | |
|---|---|
| FORM 990, PART VI, SECTION C, LINE 19 | AVAILABLE UPON REQUEST FROM THE CORPORATE OFFICE. |

**42.**    Plaintiff's counsel made demand for the information set forth on Defendant iaedp's Form 990 tax filing more than thirty (30) days prior to this Complaint being filed. However, at all material times, Defendant iaedp failed and refused to respond in any manner to said request.

<u>Unlawful Tying Arrangement</u>

**43.**    Iaedp certification process is an unlawful tying arrangement under 15 U.S.C. § 1.

**44.**    The Board Certification Market consists of several organizations overseeing certification of medical and mental health care in the United States. The American Board of Professional Psychology ("ABPP") is the primary organization for Specialty Board

Certification in Psychology. There are currently 15 Specialty Boards and 1 Subspecialty Board.

**45.**    The ABPP was incorporated in 1947 with the support of the American Psychological Association. The ABPP is a unitary governing body of separately incorporated specialty examining boards which assures the establishment, implementation, and maintenance of specialty standards and examinations by its member boards. Through its Central Office, a wide range of administrative support services are provided to ABPP Boards, Board Certified Specialists, and the public. A Specialty is a defined area in the practice of psychology that connotes special competency acquired through an organized sequence of formal education, training, and experience.

**46.**    The ABPP's specialty boards are Addiction Psychology; Behavioral & Cognitive Psychology; Clinical Child & Adolescent; Clinical Health; Clinical Neuropsychology; Clinical Psychology; Counseling; Couple & Family; Forensic Psychology; Geropsychology; Group Psychology; Organizational & Business; Police & Public Safety; Psychoanalysis; Rehabilitation; School Psychology and Serious Mental Illness.

**47.**    Since 1933, The American Board of Medical Specialties (ABMS), has been awarding board certification and is the recognized leader in developing and setting the physician specialty certification gold standard in the United States.

**48.**    The ABMS consists of 24 Member Boards offering board certification in 40 specialties and 88 subspecialties.  These Member Boards adhere to rigorous training and assessment standards.

**49.**    Defendant Harken through Defendant iaedp, bypassed these established credentialing organizations and leveraged their monopolistic power by conditioning maintenance of iaedp certification (the "tying product") on membership in iaedp (the "tied

product"). As a result, iaedp has been able to inflate the price it charges for membership in iaedp, and has thereby earned, without any offsetting pro-competitive benefits, inflated revenues from membership dues that Defendant iaedp and Harken would not otherwise have earned. Since at least January 1, 2016, iaedp has required all board-certified eating disorder specialists to purchase and maintain annual membership in iaedp and pay iaedp's annual membership dues in order to avoid iaedp's deactivation of their iaedp certification.

50.     There is no legitimate procompetitive justification, no medical justification, and no rational justification for iaedp's requirement that iaedp certified eating disorder specialists purchase annual membership in iaedp. The costs of annual membership dues incurred by Plaintiff and board-certified eating disorder specialists to maintain their board certifications are in addition to the examination, processing and administrative fees that each board-certified specialist already pays to iaedp as part of the initial certification process.

51.     The costs of iaedp membership are also in addition to the annual registration and certification fee that each board-certified eating disorder specialist already pays to iaedp to maintain his or her certification. Iaedp's requirement that certified eating disorder specialists purchase iaedp membership annually, and pay the corresponding annual membership fee, has no bearing on, and has no relationship to, a specialist's competency to practice mental health/medical care in a specialty area.

52.     Iaedp has approximately 3,000 members. Of these members, approximately 1,200 are board certified. Iaedp's membership fee requirement has no legitimate purpose and does nothing but produce additional revenue for iaedp and *ipso facto*, Defendant Harken, exceeding $230,000 dollars in annual certification and institute fees and dues. Thus, by

virtue of the unlawful tying arrangement reducing choice, Plaintiff and board-certified eating disorders specialists have been forced to purchase and maintain iaedp membership.

<u>Iaedp's unlawful Tying Arrangement has Foreclosed Competition, Raised Prices and Reduced Consumer Welfare in the Membership Market</u>

53.     Upon information and belief, no other professional physician association conditions board certification on membership in a specific organization. In fact, the tying arrangement at issue in the case at bar, was the subject of class-based litigation in 2016. That case involved American Osteopathic Association. The parties entered into a settlement agreement whereby the AOA was divested of the certification process with membership no longer being a requirement and AOA agreed to pay damages on a class wide basis.

54.     By requiring membership as a condition for board certification, iaedp has reduced the number of individuals considering purchasing membership in other professional eating disorder associations such as the Academy for Eating Disorders and the National Eating Disorder Association.  This has erected market-wide barriers to entry in the Membership Market, as potential competitors of iaedp are dissuaded from entering the market because they cannot be guaranteed a share of the market sufficient to viably compete.

55.     Iaedp's tying arrangement has reduced competition in the Association Membership Market, as other rival associations have lost potential members, and the pricing and output of market participants is not reflective of a competitive market. The diminished competition in the Association Membership Market and the exercise of market power by iaedp have harmed consumers and decreased consumer welfare. By

deterring entry and raising its rivals' costs, the actions of iaedp have resulted in iaedp's increased prices and increased prices in the Association Membership Market as a whole. This increased pricing, without any offsetting pro-competitive benefit, has reduced consumer welfare in a manner in which the antitrust laws are intended to protect.

## CLASS ACTION ALLEGATIONS

## THE CLASS

**56.**   Paragraphs 17 through 55 are hereby incorporated for all purposes.

**57.**   Plaintiff bring this action on behalf of herself, and all others similarly situated as a class action proceeding pursuant to Fed.R.Civ.P. 23. This action may properly be maintained as a class action under the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed class is ascertainable.

**58.**   Plaintiff seeks to represent a class defined as follows:

**All individual persons who became board certified through iaedp between January 1, 2017 to present and who also paid membership dues to iaedp and attended at least one national symposium during that time period.**

**59.**   The proposed class is not limited to those persons who reside in the State of Texas but include those persons nationally wherever they may be located.

**60.**   Plaintiff and the Plaintiff Class all have common and general interests.  Further, the named Plaintiff reserve the right to modify the definition of the proposed class based on information that they or their counsel learn through discovery. The named Plaintiff will fairly represent the interests of the class members involved.  The class meets all the requirements of Federal Rules of Civil Procedure 23 as follows.

<u>The Class Members Share Common and General Interests</u>

**61.**     The first prerequisite for a class action is that the Class Members share a common or general interest.  The members of the Class need not share all interests, but only a common interest.

**62.**     In this case, the common interests include, but are not limited to, the following:

       A.     All Plaintiff Class Members paid membership association dues to iaedp;

       B.     All Plaintiff Class Members attended in person at least one national symposium hosted by iaedp;

       C.     All Plaintiff Class Members successfully completed iaedp's certification program;

       D.     All Plaintiff Class Members became board certified by iaedp and paid fees and dues associated with said certification to iaedp;

       E.     With regard to Defendants' liability, Plaintiff Class Members all sustained actual damages.

<u>Numerosity</u>

**63.**     The Class members are so numerous that joinder of all is impractical. According to Defendant Harken, iaedp annually has approximately 3000 members and 1200 members in the certification program.  Confirmation of the number and identity of the members of the class are readily determinable from the records of Defendants. Clearly, the numerosity element has been met.

<u>Commonality</u>

**64.**     There are questions of law and fact common to the proposed class that predominate over any questions affecting only the individual class members. The common questions of law and fact include, without limitation:

a.      Whether iaedp's eating disorder Board Certification Market and the Association Membership Market are separate product markets;

b.      Whether, during the relevant period, iaedp had market power in the eating disorder Board Certification Market;

c.      Whether, during the relevant period, iaedp exploited its market power in the eating disorder Board Certification Market by conditioning eating disorder board certification on the purchase of annual membership in iaedp;

d.      Whether iaedp's tying arrangement affected a substantial amount of interstate commerce and/or commerce in Texas;

e.      Whether iaedp's tying arrangement caused anticompetitive effects nationally and/or in Texas;

f.      Whether there were any procompetitive justifications for iaedp's tying arrangement;

g.      Whether iaedp's tying arrangement was primarily meant to drive revenue to Defendants;

h.      Whether Defendant Harken committed tax evasion;

i.      Whether iaedp's conduct violated 15 U.S.C. §§ 1, 3;

j.      Whether Defendants were unjustly enriched because of payments made by the Plaintiff Class;

k.      Whether Defendants engaged in a civil conspiracy, and;

l.      Whether Defendants violated the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*.

Typicality

**65.**    Plaintiff claims are typical of the claims of each Class member.  Plaintiff has the same claims for damages that she seeks for absent class members.

Adequacy

**66.**    Plaintiff will fairly and adequately represent and protect the interests of the Class Members. There are no conflicts of interest between the interests of Plaintiff and the other Class Members. Counsel representing Plaintiff are competent and experienced in class litigation.

Superiority of Class Action

**67.**    A class action is superior to other available means for the fair and efficient adjudication of this controversy. The members of the Class are so numerous that it is impracticable to bring all members before the court.  Individual joinder of all proposed Class Members is not practicable, and questions of law and fact common to the proposed class predominate over any questions affecting only individual members of the proposed class. Each member of the proposed class has been damaged, which such damages were proximately caused by Defendants, and are entitled to recovery of said damages.

**68.**    The Class Members have little incentive, if any, to prosecute their claims independently and would be unlikely to find counsel to represent them. Further, the Class Members, are located in many different states, and bringing all claims together in this forum saves judicial resources. The only practical mechanism is for the Class Members to vindicate their rights through class treatment of their claims which is convenient, economical and consolidates all claims in a single suit, and serves to avoid a multiplicity of suits.

**69.**     Defendants have acted or refused to act on grounds that apply generally to the class, so that declaratory relief, statutory penalties, and awarding actual, treble and punitive damages is appropriate respecting the class as a whole. Class certification will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT ONE

### *PER SE* VIOLATION OF 15 USC § 1

**70.**     Plaintiff realleges and incorporates by reference paragraphs 17 – 69 herein as if set forth verbatim.

**71.**     Plaintiff and the Plaintiff Class Members are iaedp certified eating disorder specialists who purchased membership in iaedp since January 1, 2017.

**72.**     The eating disorder Board Certification Market is separate from the Association Membership Market.

**73.**     At all times during the relevant period, iaedp has had sole and exclusive market power, a 100% monopoly, in the eating disorder Board Certification Market, as there are no substitutes for eating disorder board certification available to eating disorder specialists.

**74.**     Plaintiff and the board-certified eating disorder specialists have been forced to purchase annual membership in iaedp, incur iaedp's annual membership dues and been required to attend in person a symposium once every four years to avoid having their iaedp board certification invalidated or canceled.

**75.**     According to Defendant Harken, board certified eating disorder specialists number at least 1,200 annually who have been required to purchase iaedp membership. From 2017 – 2021, iaedp has received a total of $516,003 in certification fees. As such, iaedp's unlawful tying arrangement has had a substantial impact on interstate commerce.

**76.**      iaedp's tying arrangement foreclosed competition in the Association Membership Market, and the eating disorder membership market resulting in market-wide pricing and product offerings that are not reflective of a competitive market.

**77.**     By conditioning iaedp certification on continuous membership in iaedp and the cost of iaedp's annual membership dues, as well as mandatory in person attendance at a symposium, iaedp established an unreasonable restraint of trade that constitutes a *per se* violation of 15 U.S.C. § 1.

**78.**     As a result of iaedp's violation of 15 U.S.C. § 1, Plaintiff and Plaintiff' Class Members have paid iaedp supra-competitive prices for membership in iaedp and the board certification.

**79.**     As recently as 2022, Defendant iaedp, through Defendant Harken had actual knowledge that their tying arrangement ran afoul of antitrust laws.   Defendant Harken had actual knowledge of the case, *Talone, et. al. v. The American Osteopathic Association*, Case No. 1:16-cv-04644 (D. N.J. Jun. 12, 2017) and the issues involving unlawfully tying association membership with board certification. Defendant Harken dismissed any concerns by attempting to justify that since the costs for association membership and certification had allegedly not increased, she could link the two.

**80.**     Defendant Harken chose to ignore the reality that in the *Talone* case, there was an alternative certifying organization. Iaedp has a 100% monopoly. Also, in the *Talone* case, the defendant did not require attendance at an annual symposium once every four years.

Defendant Harken knew that her scheme violates the antitrust laws. Defendant Harken gambled her organization would escape judicial scrutiny on the unlawful tying arrangement. Just like Defendant Harken gambled that her dissolved corporation and her status as an alleged independent contractor would escape judicial scrutiny. Just like Defendant Harken gambled her perjury on her Form 990 tax filings would not be discovered. Defendant Harken erred.

**COUNT TWO**

**VIOLATION OF 15 USC § 1 UNDER THE RULE OF REASON**

**81.**     Plaintiff realleges and incorporates by reference paragraphs 17 – 80 herein as if set forth verbatim.

**82.**     Plaintiff and the Plaintiff Class Members are Board Certified eating disorder specialists who purchased membership in iaedp since January 1, 2017.

**83.**     The eating disorder Board Certification Market is separate from the Association Membership Market.

**84.**     At all times during the relevant period, iaedp has had a 100% monopoly, the sole and exclusive market power in the eating disorder Board Certification Market, as there are no substitutes for eating disorder board certification available to eating disorder specialists.

**85.**     Plaintiff and the board-certified eating disorder specialists have been forced to purchase annual membership iaedp, incur iaedp's annual membership dues and been required to attend in person a symposium once every four years in order to avoid having their iaedp board certification be invalidated and canceled.

**86.**     There is no dispute that the tying arrangement exists. There is no dispute that no other board certification program pertaining to the treatment of eating disorders exists. There is no dispute that board certification is dependent on iaedp association membership. There is no dispute that board certification is dependent on attending iaedp's annual symposium once every four years. There is no dispute that Defendants iaedp and Harken maintain sole control over board certification. There is no dispute that Defendant Harken has been able to establish the price points for board certification, membership fees and symposium costs. There is no dispute that Defendant Harken has been unjustly enriched by the unlawful monopoly she established. And there is no dispute that Defendant Harken has engaged in cronyism by allowing at least one of her co-conspirators to receive certification even though dues and fees were not paid, and her co-conspirator did not satisfy the maintenance requirements.

<u>**COUNT THREE**</u>

<u>**UNJUST ENRICHMENT**</u>

**87.**     Plaintiff incorporates paragraphs 17 – 86 as if set forth verbatim.

**88.**     Plaintiff and the Plaintiff Class Members herein sue Defendants under the theory of unjust enrichment.

**89.**     As a result of Defendants' improper conduct described hereinabove, a monetary benefit was conferred upon Defendants and Defendants will be unjustly enriched if allowed to retain the monies paid to Defendants by Plaintiff and the Plaintiff Class.

**90.**     Plaintiff demanded that Defendants repay the money paid to Defendants but Defendants at all material times, failed and refused to repay said monies. As such, Plaintiff and the Plaintiff Class were damaged in an amount to be determined by the trier of facts.

## COUNT FOUR

## CIVIL CONSPIRACY

**91.**     Plaintiff incorporates paragraphs 17 – 90 as if set forth verbatim.

**92.**     All Defendants created and then perpetuated an enterprise designed to fraudulently enrichen herself by abusing the instrumentalities of a 501(c)(3) organization and the 501(c)(6) status of the "independent" iaedp corporate chapters.

**93.**     Save for three (3) corporate chapters[4], each of the twenty-nine (29) "independent" corporate chapters organized in the State of Illinois by Defendant Harken have the same Board of Directors. That is, Defendant Harken, Defendant Cabrera, Defendant Carson and Defendant Jahraus. These defendants also recently served as high-ranking officers of Defendant iaedp.

**94.**     Defendant Cabrera served as president of Defendant iaedp, and past-president and is on the executive board of Defendant iaedp. Part of Defendant Cabrera's job duties included signing the Annual Reports filed with the Illinois Secretary of State for the "independent" iaedp corporate chapters. As such, Defendant Cabrera had actual knowledge that each "independent" iaedp corporate chapter had the same board of directors and were completely subservient to her whims and demands as well as the demands and whims of her co-conspirators. Defendant Cabrera actively participated in the civil conspiracy by reviewing each Annual Report, signing and attesting to the accuracy of said reports.

---

[4] These three chapters merely omit Defendant Carson. Otherwise, they are identical to the other chapters.

**95.**    Defendant Jahraus serves as past-president of Defendant iaedp and is on the executive board of Defendant iaedp. Part of Defendant Jahraus' job duties include signing the Annual Reports filed with the Illinois Secretary of State for the "independent" iaedp corporate chapters. As such, Defendant Jahraus' has actual knowledge that each "independent" iaedp corporate chapter had the same board of directors and were completely subservient to his whims and demands as well as the demands and whims of his co-conspirators. Defendant Jahraus actively participated in the civil conspiracy by reviewing each Annual Report and signing said reports.

**96.**    Defendant Carson recently served as Treasurer of Defendant iaedp and is on the executive board of Defendant iaedp. Part of Defendant Carson's job duties include reviewing the Annual Reports filed with the Illinois Secretary of State for the "independent" iaedp corporate chapters and is tasked with overseeing the financial operations of Defendant iaedp. As such, Defendant Carson had actual knowledge that each "independent" iaedp corporate chapter had the same board of directors and were completely subservient to his whims and demands as well as the demands and whims of his co-conspirators. Defendant Carson knew or should have known that Defendant iaedp's resources and revenue were being denuded by Defendants Harken and M. Harken. And yet, Defendant Carson did nothing.  Defendant Carson actively participated in the civil conspiracy by reviewing each Annual Report and through acts and omissions, allowed Defendant iaedp's resources to be misdirected.

**97.**    Defendant Harken participated in the civil conspiracy by funneling revenue from Defendant iaedp, a 501(c)(3) organization, through a non-existent for-profit corporation Defendant Harken opened and then to herself. When Defendant Harken dissolved this for profit corporation in 2016, she categorized herself as a sole proprietor and continued

to receive revenue from iaedp. Defendant M. Harken assisted in the money scheme by accepting and depositing funds into a bank account controlled by Defendant Harken. To further enrichen herself, Defendant M. Harken was given employment through Defendant Harken's dissolved corporation and then sole proprietorship ostensibly working for Defendant iaedp by providing "webmaster" services. The purpose of the conspiracy was to cover up and hide Defendants Harken and M. Harken's agenda of prioritizing revenue for herself while presenting on the surface, a reputable eating disorder organization.

98.   Defendants' conspiracy to defraud was further perpetrated by significantly reducing their costs by employing all iaedp key employees as 1099 entities, by mischaracterizing the employment status of those alleged "independent contractors," by failing to pay state taxes due the State of California, by allowing the iaedp status in California to become not in good standing, by refusing to comply with the nonprofit organization laws in the states of California and Illinois and by and through their acts as previously set forth hereinabove. Defendants' other acts in furtherance of this conspiracy include, but are not limited to, the following:

     A.    Agreeing on the substance of the scheme beginning in or about 2012 by utilizing a corporation to funnel money to herself from iaedp, a 501(c)(3) organization;

     B.    Employing persons loyal to Defendant Harken by providing them upgraded suites and amenities at annual symposiums;

     C.    Concealing their scheme and pattern of wrongful activity by intentionally providing false and incomplete information to Defendant iaedp's CPA for the purpose of falsifying information on iaedp's Form 990 tax filings;

     D.    Wrongfully diverting revenue from iaedp to Defendant Harken so that she could financially profit from operating a competing therapy center named Crossroads Programs for Women;

E.   Permitting Defendant Cabrera to maintain certification status without paying the dues and fees required and without satisfying the maintenance requirements of iaedp.

**99.**   Defendants' acts originated, upon information and belief, in the States of California, Illinois, Texas, Missouri, New York and in all other states in which board-certified eating disorder specialists reside.

**100.**   As such, all Defendants knowingly entered into an agreement whereby they failed to disclose to Plaintiff and the Plaintiff Class material information regarding the operations of iaedp, including but not limited to, diverting Plaintiff's and Plaintiff Class Members' monies to and for their own use. Acts in furtherance of this conspiracy were perpetrated in the States of California, Illinois and in whatever states the Plaintiff Class resides.  Therefore, Defendants agreed to accomplish either an unlawful act or a lawful act by unlawful means and specifically intended to harm Plaintiff and the Plaintiff class. Defendants had knowledge of the common object or purpose of the conspiracy and each of the individuals committed one or more wrongful acts in furtherance of the conspiracy.

**101.**   All Defendants intended to participate in the conspiracy and as a proximate result of such individuals' conduct or acts, Plaintiff and the Plaintiff Class sustained damages in a uniform amount, to wit: the amount of their annual dues and amounts paid in furtherance of obtaining board certification for which amount Plaintiff and Plaintiff Class herein sue. Moreover, Defendants Harken and M. Harken engaged in such conduct knowingly, willfully, maliciously and intentionally.  Therefore, Plaintiff and Plaintiff Class are entitled to recover punitive damages in an amount to be determined by the trier of fact.

## COUNT FIVE

## Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

BACKGROUND FACTS AND CLAIMS RELATED TO VIOLATIONS OF the FEDERAL
RACKETEERING STATUTES

### A.     The RICO Enterprise

**102.**   Defendants, individually through their own actions, conduct and failure to act, and through their joint conspiracy operated and engaged in legitimate and illegitimate activities, including the racketeering activities herein alleged which such activities caused damage to Plaintiff and the Plaintiff Class.

**103.**   Defendant Harken, as Managing Director, Defendant M. Harken, as iaedp's Webmaster, and Defendants Cabrera, Carson and Jahraus through the authority vested in them in the capacities as former officers and current board members of the "independent" iaedp corporate chapters, were at all relevant times operating Defendant iaedp as a single enterprise and its rights, obligations, employees, contractors, agents and assets were routinely commingled and transferred and utilized by Defendant Harken without fair consideration to Plaintiff and the Plaintiff Class.

**104.**   At all times relevant to this Complaint, Defendant Harken, in conspiracy with the other defendants, exercised dominion and control over the conduct and activities, both legitimate and illegitimate, of herself and the operations of iaedp. Decisions concerning both the illegitimate and legitimate conduct of the enterprise operated by Defendant Harken were made by Defendants Harken, M. Harken, Cabrera, Carson and Jahraus with the approval and/or acquiescence of Defendant iaedp. As such, Defendants Harken and M. Harken, violated 18 U.S.C. § 1962(a) by, " ... receiv[ing] any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful

debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

**105.** At all times relevant to this Complaint, Defendants Harken and M. Harken violated 18 U.S.C. § 1962(c) by, "... being associated with an enterprise engaged in or the activities of which affect interstate or foreign commerce to conduct or to participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity.

**106.** At all times relevant to this Complaint, Defendants Harken, Cabrera, Carson, Jahraus and M. Harken violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C § 1962(a) and 18 U.S.C. § 1962(c).

**107.** A RICO Act claim under 18 U.S.C. §§ 1962(a), (c) and (d) requires a plaintiff to prove the following:

    (1).    A person engaged in;

    (2).    A pattern of racketeering activity connected to;

    (3).    The conduct or control of an enterprise.

Persons

**108.** Defendants Harken, M. Harken, Cabrera, Carson, Jahraus and iaedp qualify as "persons" under 18 U.S.C. § 1961(3). Each of Defendants Harken, M. Harken, Cabrera, Carson and Jahraus and iaedp is an "individual or entity capable of holding a legal or beneficial interest in property" and as such, each constitutes a "person" within the meaning of 18 U.S.C. § 1961(3).

Racketeering Activity

**109.**   A "racketeering activity" as defined by 18 U.S.C. § 1961(1) includes, *inter alia,* any act which is indictable under 18 U.S.C. § 1341 (relating to mail fraud); 18 U.S.C. § 1343 (relating to wire fraud); 18 U.S.C. § 1952 (relating to racketeering), and/or; 18 U.S.C. § 1952 (relating to racketeering).

Texas Penal Code §32.45 – Misapplication of Fiduciary Property

**110.**   Defendants Harken, M. Harken and iaedp committed the racketeering activity of misapplying fiduciary property under Texas Penal Code § 32.45 and the crime is punishable with imprisonment for more than one year. To this end, Defendants Harken and M. Harken knowingly utilized iaedp as an instrument to further and accomplish their scheme by diverting monies from third parties, including but not limited, Plaintiff and Plaintiff Class Members.

**111.**   Contrary to iaedp's public representations, Defendants Harken and M. Harken solicited and accepted monies acquired through fraud by non-disclosure and misapplied monies to and for their own use. To this end, Defendant Harken received (not including payment of alleged expenses and bonuses) $617,000 from 2018 through 2021. Defendant M. Harken received (not including payment of alleged expenses and bonuses) $247,725 from 2018 through 2021.

Texas Penal Code § 32.32. False Statement to Obtain Property

**112.**   Defendant Harken committed the racketeering activity of making false statements to obtain property under Texas Penal Code § 32.32 and the crime is punishable with imprisonment for more than one year. Defendant Harken knew that in order to increase her profits and revenue, she had to make board certification and association membership inextricably intertwined. The largest money maker for Defendants iaedp and Harken was

and is the annual symposium. To assure constant and growing attendance, Defendant Harken made in person attendance mandatory for board certification. Therefore, in order to continue to solicit revenue, iaedp maintained a façade of being an eating disorder research organization which embraced evidence-based, medical and mental health treatment for eating disorders. In truth, Defendant iaedp became *ipso facto*, an ATM to be utilized by Defendant Harken and M. Harken to be utilized to enrichen herself with little or no accountability from any third parties.

**113.**    Defendant Harken knowingly utilized iaedp as an instrument to further her unethical and illegal agenda to accumulate revenue through the above-mentioned conduct.

Texas Penal Code § 32.42. Deceptive Business Practices

**114.**    Defendants committed the racketeering activity of engaging in deceptive trade practices under Texas Penal Code § 32.42. To this end, Defendants in the course of business intentionally, knowingly, recklessly, or with criminal negligence committed one or more of the following deceptive business practices: (7)  represented that a commodity or service is of a particular style, grade, or model if it is of another.

**115.**    In order to continue the illicit revenue flowing to Defendants Harken and M. Harken without having to be accountable for their illicit conduct, all Defendants refused to have an independent, audited financial statement prepared. All Defendants engaged in conduct designed to maintain 100% control over the "independent" iaedp chapters. Defendant Harken, despite having actual knowledge that iaedp's tying arrangement was unlawful, continued to enforce its unlawful enforcement. All the while, all Defendants were maintaining the façade that iaedp was a reputable organization which continued to embrace and support evidence-based, medical and mental health treatment for eating

disorders. Therefore, all Defendants specifically represented that Defendant iaedp was an organization of a particular style, grade or model.

Wire Fraud – 18 U.S.C. § 1343

**116.**   All Defendants devised a scheme or artifice to defraud by means of wire, radio or television communication in interstate and foreign commerce. By reason of the conduct described hereinabove, all Defendants violated, are violating, and continue to violate 18 U.S.C. § 1343 on an on-going basis by engaging in and facilitating a scheme and artifice to defraud and obtain money or property by means of false or fraudulent representations with the intent to defraud, and, in so doing, use interstate or foreign wire communications.

**117.**   All Defendants engaged in conduct having a substantial impact upon interstate commerce, including by, among other methods, soliciting and accepting membership payments, certification payments, payments from "independent" iaedp corporate chapters from Plaintiff and the Plaintiff Class and third parties residing throughout the United States, selling services in interstate commerce, entering into contracts with the Plaintiff Class Members which involve the movement of services in interstate commerce, and entering into agreements affecting interstate commerce.

**118.**   Defendants Harken and M. Harken obtained and used the proceeds of the racketeering activity herein alleged in and for the promotion of all Defendants' conspiracy and scheme to enter into arrangements providing ill-gotten revenue to Defendants Harken and M. Harken. Defendants Harken and M. Harken illegally exercised dominion and control over payments, fees and dues from Plaintiff and the Plaintiff Class.

Mail Fraud – 18 U.S.C. § 1341

**119.**    All Defendants devised a scheme or artifice to defraud by means of soliciting payments utilizing the United States Postal Service. Defendants' scheme further utilized the United States Postal Service by transferring and accepting revenue in interstate and foreign commerce. By reason of the conduct described hereinabove, all Defendants violated, are violating, and continue to violate 18 U.S.C. § 1341 on an on-going basis by engaging in and facilitating a scheme and artifice to defraud and obtain money or property by means of false or fraudulent representations with the intent to defraud, and, in so doing, use interstate or foreign communications.

Monetary Transactions Derived from Unlawful Activity – 18 U.S.C. § 1957.

**120.**    Defendants Harken and M. Harken knowingly engaged in monetary transactions in criminally derived property (false statements to obtain property, deceptive business practices, fraud) of a value greater than $10,000 in the United States.

Enterprise or Association in Fact

**121.**    All Defendants participated in an enterprise or association in fact. Each Defendant participated in an on-going organization and each associate functioned as a continuing unit. The individual defendants and iaedp, the organizational entity run by Defendant Harken associated together to commit several criminal acts as set forth hereinabove which gave their association an ongoing nature allowing it to come within the purview of the RICO Act.

**122.**    Defendants, their agents and co-conspirators formed an association in fact for a common purpose of committing financial fraud perpetrated against Plaintiff and the Plaintiff Class. All defendants associated together to commit numerous acts constituting financial fraud over several years and their acts are on-going.

**123.** The specific predicate acts perpetrated by Defendants Harken and M. Harken include, but are not limited to the following:

(a). They were all done by or at the direction of Defendant Harken, with the approval and/or acquiescence of the remaining Defendants for their benefit and the personal benefit of Defendants Harken and M. Harken;

(b). The illegal conduct and actions were all perpetrated by Defendants Harken and M. Harken outside of the scope of the legitimate authority of their office or employment and/or for their personal benefit;

(c). The illegal conduct and actions were all directed at Plaintiff and the Plaintiff Class in such a manner as to cause Plaintiff, the Plaintiff Class and third parties ultimate harm or injury;

(d). The illegal conduct and actions all relate to each other as part of a common course of conduct, plan, and objective to engage in a continued and concerted course of conduct with the purpose and effect of defrauding Plaintiff, the Plaintiff Class and third parties;

(e). The illegal actions and conduct all shared common methods in that each were committed by and under the direction of Defendant Harken;

(f). The illegal actions and conduct all included acts of concealment, fraud by non-disclosure and/or coercion, the illegitimate economic effect of which was the diversion of financial resources toward Defendant Harken and her competing for profit businesses;

(g). The illegal actions and conduct had sufficient continuity and duration in that they occurred from 2012 to date current, and;

(h.) The illegal actions and conduct each pose a threat of on-going repetition against Plaintiff and the Plaintiff Class.

**124.**   These facts establish a period of repeated conduct that began as early as 2012 and are still on-going. These facts also establish that without this litigation and an award of relief, Defendants' illicit and illegal conduct will continue. To this end, these matters were brought to the attention of the Board of Directors of iaedp. The Board only conducted a cursory investigation through counsel, admitted that many of the errors and wrongdoings brought to their attention were in fact, accurate.  However, the Board of Directors took no action against Defendant Harken.

**125.**   As a result, Defendant Harken engaged in a misinformation campaign directed to the "independent" iaedp corporate chapters, including but not limited to, advising them not to be open to information which supported the allegations set forth in this Complaint.

**126.**   Plaintiff and the Plaintiff Class suffered and continue to suffer injury as a direct, proximate, and foreseeable result of the foregoing acts perpetrated by all Defendants. Accordingly, Plaintiff and the Plaintiff Class seek class certification and subsequent thereto, an award of actual damages, costs of this litigation, and reasonable attorneys' fees.

**127.**   Plaintiff and the Plaintiff Class seek treble damages pursuant to 18 U.S.C. § 1964(c).

## <u>REQUEST FOR TRIAL BY JURY</u>

**128.**   Plaintiff and the Plaintiff Class hereby request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, individually and on behalf of others similarly situated, respectfully request that all Defendants appear and answer herein, and that the Court grant the following relief:

1.  Assume jurisdiction over Plaintiff' claims and the claims of the Class Members;

2.  Certification of this case and the claims for class treatment, with the class defined as set forth in this complaint;

3.  Designate Plaintiff as representatives for the class;

4.  Designate the undersigned as counsel for the class;

5.  Find that the tying arrangement set forth hereinabove violates provisions of the Sherman Antitrust Act and to make provisions to have the Board Certification process divested from iaedp;

6.  Find that Defendants Harken and M. Harken were unjustly enriched as a proximate result of their illegal and criminal conduct;

7.  Declare that Defendants entered into an illegal civil conspiracy;

8.  Declare that Defendants violated the afore-mentioned sections of the Racketeer Influenced Corrupt Organizations Act;

9.  Declare that Plaintiff and the Class Members sustained actual damages as a proximate result of Defendants' conduct;

10. Return to Plaintiff and the Plaintiff Class all monies paid to iaedp from January 1, 2017, to present;

11. Award to Plaintiff and the Class Members their actual damages as a proximate result of Defendants' conduct;

12.     Award to Plaintiff' counsel all reasonable and necessary attorney's fees incurred prosecuting this action;

13.     Award to Plaintiff treble damages;

14.     Award to Plaintiff exemplary damages, and;

15.     Award such other relief, at law or in equity, as the Court deems just and proper.

Respectfully submitted,

*Steven Dunn*
_____
Steven R. Dunn
State Bar No. 06252250
5830 Preston Fairways
Dallas, Texas 75252

Telephone (214) 769.7810
*steven@dunnlawfirm.net*

**ATTORNEY FOR PLAINTIFF**