## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| JOY ZELIKOVSKY, Individually and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL CASE NO. 3:23-CV-02624-N |
| INTERNATIONAL ASSOCIATION OF EATING DISORDER PROFESSIONALS' FOUNDATION, INC., a California Corporation, BONNIE HARKEN, JOEL JAHRAUS, DENA CABRERA, AND RALPH CARSON | § § § § § § § | |
| Defendants. | § § | |

---

## DEFENDANTS IAEDP'S AND THE BOARD MEMBERS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER TO THE CENTRAL DISTRICT OF ILLINOIS

---

James J. Sipchen (*admitted pro hac vice*)
John H. Scheid, Jr. (*admitted pro hac vice*)
Pretzel & Stouffer, Chartered
200 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 578-7422
Facsimile: (312) 346-8242
jsipchen@pretzel-stouffer.com

William N. Radford
Texas Bar No. 16455200
Carson J. Henderson
Thompson, Coe, Cousins & Irons, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Telephone: (214) 871-8200
Facsimile: (214) 871-8209
wradford@thompsoncoe.com
chenderson@thompsoncoe.com

*Attorneys for Defendants International Association of Eating Disorder Professionals' Foundation, Inc., Joel Jahraus, Dena Cabrera, and Ralph Carson*

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 1

The Parties ................................................................................................................. 1

Defendants' Lack Of Contacts With Texas. ............................................................. 2

Plaintiff's Allegations ............................................................................................... 7

ARGUMENT ............................................................................................................... 10

I.    PLAINTIFF'S CLAIMS AGAINST IAEDP AND THE BOARD MEMBERS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION .................................... 10

    A.    The Court Lacks Personal Jurisdiction Over Plaintiff's Antitrust Claims Under The Clayton Act's Nationwide Service Of Process Provision. ........................................ 12

    B.    The Court Lacks Personal Jurisdiction Over Plaintiff's Civil RICO And RICO Conspiracy Claims Under RICO's Nationwide Service Of Process Provision. ....... 15

        1.    This court lacks general jurisdiction. ............................................................... 16

        2.    This court lacks specific jurisdiction. .............................................................. 17

        3.    Should the court need to address the issue, the exercise of personal jurisdiction in Texas would not serve the "ends of justice." ............................ 20

    C.    The Court Lacks Personal Jurisdiction Over Plaintiff's State Law Unjust Enrichment Claim. ......................................................................................... 22

II.    PLAINTIFF'S CLAIMS AGAINST IAEDP AND THE BOARD MEMBERS SHOULD BE DISMISSED, OR ALTERNATIVELY, TRANSFERRED TO THE CENTRAL DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1406(a) BECAUSE VENUE IN THIS DISTRICT IS IMPROPER. ........................................ 23

III.    EVEN IF VENUE IS PROPER IN THIS DISTRICT, THE COURT SHOULD TRANSFER THE CASE TO THE CENTRAL DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1404(a). ...................................................................... 25

CONCLUSION .......................................................................................................... 30

## TABLE OF AUTHORITIES

CASES                                                                                      PAGE(S)

*Access Telecomms., Inc. v. MCI Telecomms. Corp.*,
   197 F.3d 694 (5th Cir. 1999)...................................................................................12

*Bentz v. Recile*,
   778 F.2d 1026 (5th Cir. 1985).................................................................................25

*Bigham v. Envirocare of Utah*,
   123 F.Supp.2d 1046 (S.D. Tex. 2000).....................................................................28

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
   582 U.S. 255 (2017)..............................................................................11, 17, 18, 19

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)................................................................................................19

*Cedarview Mart, LLC v. State Auto Prop. & Cas. Co.*,
   2021 U.S. Dist. LEXIS 60871 (N.D. Miss.) ..........................................................11

*Companion Prop. & Cas. Ins. Co. v. Palermo*,
   723 F.3d 557 (5th Cir. 2013)..................................................................................16

*Conn Appliances, Inc. v. Williams*,
   936 F.3d 345 (5th Cir. 2019)..................................................................................11

*Cont'l W. Ins. Co. v. Liepke Invs.*,
   2011 U.S. Dist. LEXIS 171653 (N.D. Tex.) ..........................................................24

*Conveyor Aggregate Prods. Corp. v. Benitez*,
   2019 U.S. Dist. LEXIS 74559 (W.D. Tex.) ...........................................................17

*Corr Wireless Communs. v. AT&T, Inc. LLC*,
   907 F.Supp.2d 793 (N.D. Miss. 2012) ...................................................................12

*Crenshaw v. Antokol*,
   287 F.Supp.2d 37 (D.D.C. 2003) ...........................................................................20

*Crownover v. Crownover*,
   2016 U.S. Dist. LEXIS 203425 (W.D. Tex.) .........................................................22

*Cruson v. Jackson Nat'l Life Ins. Co.*,
   954 F.3d 240 (5th Cir. 2020)..................................................................................11

*Cunningham v. CBC Conglomerate LLC*,
   359 F.Supp.3d 471 (E.D. Tex. 2019) ................................................................10, 17

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)..................................................................................................16,17

*Dale v. Deutsch Telekom AG,*
    2023 U.S. Dist. LEXIS 196872 (N.D. Ill) .......................................................... 11, 14

*Daniel v. Am. Bd. of Emergency Med.,*
    428 F.3d 408 (2d Cir. 2005)................................................................................. 15

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.,*
    24 F.4th 491 (5th Cir. 2022)................................................................................. 11

*Dataquill, Ltd. v. Apple Inc.,*
    2014 U.S. Dist. LEXIS 82410 (W.D. Tex.) ..........................................................27

*Davidson v. Grossman,*
    2007 U.S. Dist. LEXIS 48544 (S.D. Tex.)............................................................24

*Diagnostic Affiliates of Ne. Hou, LLC v. United Health Grp., Inc.,*
    2022 U.S. Dist. LEXIS 14130 (S.D. Tex.)............................................................14

*Domain Prot. LLC v. Keating,*
    2016 U.S. Dist. LEXIS 135093 (N.D. Tex.)..........................................................15

*Eagle Metal Prods., LLC v. Keymark Enters., LLC,*
    651 F.Supp.2d 577 (N.D. Tex. 2009)....................................................................21

*Energium Health v. Gabali,*
    2022 U.S. Dist. LEXIS 204474 (N.D. Tex.)..........................................................20

*Energium Health v. Gabali,*
    2023 U.S. Dist. LEXIS 169564 (N.D. Tex.)..........................................................29

*Fernandez-Lopez v. Hernandez,*
    2020 U.S. Dist. LEXIS 253510 (W.D. Tex.) .........................................................21

*Flores v. Koster,*
    2013 U.S. Dist. LEXIS 92042 (N.D. Tex.)............................................................15

*Franco v. Mabe Trucking Co.,*
    3 F.4th 788 (5th Cir. 2021)....................................................................................25

*Frank v. PNK (Lake Charles) L.L.C.,*
    947 F.3d 331 (5th Cir. 2020)................................................................................16

*Glazier Grp., Inc. v. Mandalay Corp.,*
    2007 U.S. Dist. LEXIS 50184 (S.D. Tex.)............................................................25

*Golf City, Inc. v. Wilson Sporting Goods, Inc.*,
   555 F.2d 426 (5th Cir. 1977)................................................................15

*Goodyear Dunlop Tires Oper., S.A. v. Brown*,
   564 U.S. 915 (2011)........................................................................16

*Graceland v. Plutus Enters. LLC*,
   2022 U.S. Dist. LEXIS 75016 (M.D. Fla.)................................................20

*Groesbeck v. Bumbo*,
   2013 U.S. Dist. LEXIS 86973 (S.D. Tex.)...........................................28, 30

*Ham v. La Cienega Music Co.*,
   4 F.3d 413 (5th Cir. 1993)..................................................................11

*Hanson v. Denckla*,
   357 U.S. 235 (1958)........................................................................18

*Henrichs v. Nova Biomedical Corp.*,
   2014 U.S. Dist. LEXIS 79275 (S.D. Tex.).................................................23

*Hostettler v. Bigelsen*,
   1992 U.S. Dist. LEXIS 4650 (D.N.J.) ....................................................17

*In re Horseshoe Entm't.*,
   337 F.3d 429 (5th Cir. 2003)...............................................................26

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013)...............................................................27

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008)...........................................................25, 26

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008)...............................................................16

*Kinney v. IBM*,
   2021 U.S. Dist. LEXIS 267017 (W.D. Tex.) ...........................................18

*Lozada-Leoni v. Moneygram Int'l, Inc.*,
   2019 U.S. Dist. LEXIS 225885 (E.D. Tex.) ............................................27

*Mair Holdings, Inc. v. Air Line Pilots Ass'n*,
   2007 U.S. Dist. LEXIS 106567 (S.D. Tex.)..........................................26. 28

*Mayfield v. Hills Bank & Tr. Co.*,
   2022 U.S. Dist. LEXIS 170266 (W.D. Tex.) ...........................................23

*McClintock v. Sch. Bd. E. Feliciana Parish*,
 299 F. App'x 363 (5th Cir. 2008).................................................................24

*Mgmt. Insights, Inc. v. CIC Enters., Inc.*,
 194 F.Supp.2d 520 (N.D. Tex. 2001)...........................................................12

*Monkton Ins. Servs. v. Ritter*,
 768 F.3d 429 (5th Cir. 2014).......................................................................18

*Nat'l Infusion Ctr. Ass'n v. Becerra*,
 2024 U.S. Dist. LEXIS 26256 (W.D. Tex.) ...................................................23

*Quick Techs., Inc. v. Sage Grp. PLC*,
 313 F.3d 338 (5th Cir. 2002)........................................................................10

*Ramzan v. GDS Holdings, Ltd.*,
 2019 U.S. Dist. LEXIS 168156 (E.D. Tex.) ..................................................12

*Robertson v. M/V Cape Hunter*,
 979 F.Supp. 1105 (S.D. Tex. 1997)...............................................................28

*Ross v. Runyon*,s
 156 F.R.D. 150 (S.D. Tex. 1994) ..................................................................14

*Sanderson v. Spectrum Labs, Inc.*,
 227 F. Supp. 2d 1001 (N.D. Ind. 2000) ........................................................15

*SeaTrepid La., LLC v. Richard Phillips Marine, Inc.*,
 2009 U.S. Dist. LEXIS 46274 (E.D. La.) ......................................................19

*Seville v. Maersk Line, Ltd.*,
 53 F.4th 890 (5th Cir. 2022)..........................................................................25

*Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*,
 2021 U.S. Dist. LEXIS 101038 (D. Vt.)...................................................14, 15

*Southampton, Ltd. v. Norman*,
 2019 U.S. Dist. LEXIS 227279 (N.D. Tex.)..............................................23, 24

*Taylor v. Cmty. Bankers Sec., LLC*,
 2013 U.S. Dist. LEXIS 86485 (S.D. Tex.).....................................................29

*Trois v. Apple Tree Auction Ctr., Inc.*,
 2018 U.S. Dist. LEXIS 116893 (W.D. Tex.)..................................................25

*United States ex rel. Sullivan v. Atrium Med. Corp.*,
 2014 U.S. Dist. LEXIS 202473 (W.D. Tex.) ................................................22

*Vanderbol v. State Farm*,
 2020 U.S. Dist. LEXIS 219987 (E.D. Tex.) ...........................................................22

*Walden v. Fiore*,
 571 U.S. 277 (2014)...........................................................................................19

*Watkins v. Gateway First Bank*,
 2021 U.S. Dist. LEXIS 84312 (N.D. Tex.) ..............................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980)...........................................................................................18

| STATUTES | PAGE(S) |
|---|---|
15 U.S.C. § 22 ............................................................................................................12

18 U.S.C. § 1965 ......................................................................................................15

28 U.S.C. § 1391 ......................................................................................................23

28 U.S.C. § 1404(a) ..................................................................................................25

28 U.S.C. § 1406(a) ............................................................................................23, 25

28 U.S.C. § 1631 ......................................................................................................25

| RULES | PAGE(S) |
|---|---|
Fed. R. Civ. P. 9(b) ..................................................................................................21

Fed. R. Civ. P. 12(b)(2) ............................................................................................10

Fed. R. Civ. P. 12(b)(3) ............................................................................................23

Fed. R. Civ. P. 12(b)(6) ............................................................................................21

Fed. R. Civ. P. 12(g)(2) ............................................................................................21

Fed. R. Civ. P. 12(h)(2) ............................................................................................21

Fed. R. Civ. P. 12(h)(3) ............................................................................................21

## INTRODUCTION

Plaintiff, a Connecticut resident who practices as a psychologist in that state with seemingly no connection with the State of Texas, has filed this action against a number of defendants from various states alleging violations of the Sherman Antitrust Act, RICO, conspiracy, and unjust enrichment arising from operations in Illinois by a non-profit California corporation headquartered in Illinois dedicated to the prevention of eating disorders. While Plaintiff conveniently lumps together references to all "Defendants" in its pleadings without alleging who did what, the fact of the matter is that *none* of the defendants reside or transact business in Texas, and *none* of Plaintiff's claims arise out of any actions or omissions defendants undertook in Texas.

Plaintiff's claims should be dismissed for lack of personal jurisdiction and improper venue. Alternatively, the case should be transferred to the United States District Court for the Central District of Illinois for the convenience of the parties and in the interest of justice.

## FACTUAL BACKGROUND

### The Parties.

Plaintiff has filed this action against the International Association of Eating Disorder Professionals' Foundation, Inc. ("iaedp"); three members of iaedp's Board of Directors: Joel Jahraus ("Jahraus"), Dena Cabrera ("Cabrera"), and Ralph Carson ("Carson") (collectively, the "Board Members"); as well as iaedp's Managing Director, Bonnie Harken ("Harken"). (Dkt. 31). Plaintiff initially brought this action anonymously and has since amended her Complaint twice to add allegations and sue in her own name. (Dkt. 1, 11, 31). Plaintiff purports to bring this action on behalf of a class of individuals who became Board Certified Eating Disorder Specialists ("CEDS") between January 1, 2017, through the present and paid membership dues to iaedp and attended its national symposium." (Dkt. 31, ¶ 47).

**Defendants' Lack Of Contacts With Texas.**

Significantly, Plaintiff is *not* a resident of the State of Texas.  She resides in Connecticut.  (Dkt. 31, ¶ 5).  She holds a license to practice psychology in the State of Connecticut and is the owner of Nourish the Heart Counseling located in New Haven, Connecticut where she provides individual counseling services to patients with eating disorders and problems with substance abuse.  (Dkt. 35-1 p. 3).  Plaintiff is currently a member of the New Haven/Hartford Chapter of iaedp and has acted as its secretary since December 2019.  (Dkt. 35-1, p. 8).  She claims she has a board certification as an eating disorder specialist ("CEDS") that she obtained from iaedp.  (Dkt. 31, ¶ 3).  However, Plaintiff does not allege that she has any ties with Texas.  (Dkt. 31).  She also does not allege that her CEDS certification or iaedp membership has any connection to Texas.  (Id)

Defendants likewise lack contacts with Texas.  Jahraus is a resident of Naples, Florida where he has lived the last two years.  (*See*, Declaration of Joel Jahraus at A.1, ¶ 1).[1]  Cabrera resides in Anthem, Arizona where she has lived for 22 years.  (*See*, Declaration of Dena Cabrera at A.7, ¶ 1).  Carson resides in Huntsville, Alabama where he has lived for 46 years.  (*See*, Declaration of Ralph Carson at A.12, ¶ 1).  Harken is a resident of Pekin, Illinois.  (Dkt. 35-1, p. 17, ¶ 9).  Jahraus, Cabrera, and Carson are all members of iaedp's Board of Directors.  (A.1, A.7, A.12 ¶ 2).  None of them have ever resided, paid personal income tax, advertised, been registered to vote, maintains any bank accounts, or owns or leases any property in Texas.  (A.4, ¶¶ 26-29; A.10, ¶¶ 23-26; A.15, ¶¶ 24-27).  Nor do any of them travel to Texas for any iaedp business.  (A.4, ¶ 30; A.10, ¶ 27; A.15, ¶ 28).

Iaedp independently contracts with Harken to serve as the organization's Managing Director.  (Dkt. 35-1, p. 15, ¶ 1, p. 17, ¶ 7).  Iaedp is a 501(c)(3) nonprofit California corporation

---

[1]Citations to A.__ are to pages of iaedp's and the Board Members' Appendix of Exhibits that has been separately filed in support of this motion.

2

that maintains its headquarters and principal place of business in Pekin, Illinois.  (A.1, ¶ 3).  It serves to promote a high level of professionalism among practitioners who treat those suffering from eating disorders by promoting ethical and professional standards, offering education and training in the field, certifying those who have met prescribed requirements, promoting public and professional awareness of eating disorders, and assisting in prevention efforts.  (Id., ¶ 4).  Iaedp has over 30 local member chapters located in 21 states and an international chapter for those chapters located outside of the United States that exist in 8 different countries. (A.1-A.2, ¶ 5).

Among the local chapters, there is a local chapter located in New Haven, Connecticut (the "New Haven Local Chapter") and one located in Dallas/Fort Worth, Texas (the "Dallas/FW Local Chapter").  (A.2, ¶ 6).  Each local chapter, including the New Haven Local Chapter and Dallas/FW Local Chapter, is separately incorporated from iaedp and exists as a separate business entity from iaedp.  (Id., ¶ 7).  Local chapters also organize and put on their own events, seminars, and continuing education courses that are separate from those that the iaedp offers.  (Id., ¶ 8).

Members of the iaedp can, but do not have to, be members in a local chapter.  (A.2, ¶ 9).  In fact, Jahraus and Carson are not members of any iaedp local chapter, much less the Dallas/FW Local Chapter or any other local chapter located in Texas.  (A.2, A.13, ¶ 10).  Cabrera likewise is not a member of any iaedp local chapter in Texas; she is a member of the Phoenix local chapter.  (A.8, ¶ 10).  Those who are active members of a local chapter receive a discount on their membership fee in iaedp.  (Id., ¶ 9).  Iaedp members can also choose to become board certified as an eating disorder specialist ("CEDS") provided they meet the qualifications for certification.  (Dkt. 35-1, p. 16, ¶ 5).  The Board Members are all CEDS.  (A.4, ¶ 25; A.10, ¶ 22; A.15, ¶ 23).

Jahraus is a physician licensed in the State of Florida who specializes in the care and treatment of persons who have eating disorders.  (A.3, ¶ 19).  His current position is V.P. of

3

Medical Services at Monte Nido & Affiliates ("Monte Nido'), which is headquartered in Miami, Florida and has eating disorder treatment centers located across the United States. (Id., ¶ 21).[2] Jahraus works at Monte Nido in an administrative role. (Id., ¶ 23). While most of his work is at Monte Nido's Florida office, his job at times requires him to travel to facilities located throughout the country. (Id., ¶¶ 21, 23). Jahraus does not see any patients at these facilities, but rather, provides administrative oversight to medical providers at these facilities. (Id., ¶ 23). He holds a medical license in 20 states, including Texas, but does not practice medicine or see any patients in Texas. (Id., ¶ 20). At times, Jahraus has occasionally traveled to Houston for work to provide services solely in his administrative role. (A.4, ¶ 24). Iaedp's CEDS certification is not required for Jahraus to practice medicine or see or treat patients with eating disorders. (Id., ¶ 25).

Cabrera is a clinical psychologist who treats individuals, families, and groups with a range of psychological and psychiatric disorders, including eating disorders. (A.9, ¶ 19). Cabrera has not held any employment in the State of Texas. (A.10, ¶ 24). Rather, she practices psychology in the State of Arizona, which is where she lives and provide services to her patients. (A.9, ¶ 20). She is also permitted to provide telepsychology services to patients remotely pursuant to the Psychology Interjurisdictional Compact ("PSYPACT"), which is an interstate compact designed to allow licensed psychologists to practice telepsychology from the state where they are licensed (here, Arizona) across state boundaries without necessitating that an individual become licensed in every state to practice. (Id.). From her office in Arizona, she provides telepsychology service remotely to clients in ten different states but has only one patient in Texas to whom she provides such services who lives in Plano, Texas. (A.9-A.10, ¶ 21). Cabrera does not practice psychology

---

[2] Monte Nido was acquired by Revelstoke Capital Partners, LLC in 2022 which is a Delaware limited liability company headquartered in Denver, Colorado. (A.3, ¶ 22).

or see any patients within the State of Texas.  (Id.).  Iaedp's CEDS certification is not required for her to practice psychology or see or treat patients with eating disorders.  (A.10, ¶ 22).

Carson has a PhD from Auburn University and is a clinical nutritionist and physiologist with nearly 40 years of experience in treating various mood and anxiety disorders, including eating disorders.  (A.14, ¶ 19).  He is currently retired.  (Id., ¶ 20).  When he practiced, he primarily saw patients in Alabama, and he has never practiced or seen patients in Texas.  (Id., ¶ 19).  More recently, and prior to retirement, Carson was a Senior Clinical and Research Advisor for the Eating Recovery Center & Pathlight Foundation ("ERC"), a non-profit Colorado corporation headquartered in Denver, Colorado.  (Id., ¶ 20).  In this role, he gave educational presentations on various medical topics in cities across the country primarily where ERC has facilities, including occasionally, Texas, which accounted for approximately 5% of his travel.  (A.14-A.15, ¶¶ 21-22).  However, Carson has never held any employment in Texas and has not traveled for these presentations since 2019.  (A.15, ¶¶ 22, 25).  Iaedp's CEDS certification is not required for him to practice physiology or as a nutritionist or see and treat patients with eating disorders.  (Id., ¶ 23).

Iaedp currently has 3,289 members.  (A.8, ¶ 14).  Of those, there are approximately 215 members located in the State of Texas, 136 of which are members of the Dallas/FW Local Chapter.  (Id.).  Iaedp and local chapters, including the Dallas/FW Local Chapter, have separate officers and directors and separate sets of bylaws.  (Id., ¶ 11).  Contrary to Plaintiff's assertions, no officer, director, or board member of iaedp is an officer, director, or board member of the Dallas/FW Local Chapter.  (Id., ¶ 12; *see also*, https://www.iaedp.com/chapter).  Indeed, only one of iaedp's sixteen board members, Susan Mengden, lives in the State of Texas.  (Id., ¶ 13).  Ms. Mengden resides in San Antonio, Texas, which is outside the Northern District of Texas.  She is a board member of the San Antonio local chapter.  (Id.).

Iaedp does not conduct any business in Texas other than the memberships it receives from persons who happen to reside in Texas.  (A.8-A.9, ¶ 15).  Only 4% of iaedp's national membership are members of the Dallas/FW Local Chapter.  (Id.).  Only 6½% of iaedp's national membership is from the entire State of Texas.  (Id.).  Iaedp has no offices in the State of Texas.  (A.9, ¶ 16).  Again, its sole place of business is located in Pekin, Illinois.  (Id.).  Iaedp does not own any real estate in the State of Texas, rent any property located in Texas, or have any bank accounts in Texas.  (Id., ¶ 17).  Iaedp holds an annual continuing education symposium for its members in either Florida or California. (Id., ¶ 18). Members are only required to attend a symposium once every four years.  (Id.)  The symposium can also be attended online. (Id.)  The iaedp has not ever held its symposium in Texas.  (Id)

All physical records relating to the governance and management of iaedp and its memberships and/or certifications are maintained at iaedp's headquarters in Pekin, Illinois.  (A.10-A.11, ¶¶ 30, 31). Some records relating to iaedp's governance, management, certifications and membership are also stored electronically on various platforms.  (A.11, ¶ 32).  However, none of iaedp's corporate records are located in Texas.  (Id.).  Again, Harken resides in Pekin, Illinois, and any records Harken may have relating to this matter are believed to be located in Illinois.  (Id., ¶ 33).  No material witnesses in this case, including the Plaintiff, are believed to reside in Texas.  (Id., ¶ 34; A.5, ¶ 37; A.16, ¶ 35).  Attending trial in the Northern District of Texas would present a financial burden and hardship on the Board Members and iaedp as an organization as opposed to attending a trial in the Central District of Illinois, which is where iaedp's corporate headquarters are located, and would be more convenient.  (A.5, ¶¶ 38, 39; A.11, ¶¶ 35, 36; A.16, ¶ 37).

6

**Plaintiff's Allegations.**

Despite its length, Plaintiff's Second Amended Complaint ("SAC") is not well-pled.  The SAC is replete with bare, naked, legal conclusions that are not pled with any supporting facts.  (Dkt. 31). Plaintiff also makes it a habit of making allegations that vaguely lump all defendants together without discerning who did what or even who exactly the defendants are in each of Plaintiff's five counts alleging violation of the Sherman Antitrust Act (Counts I and II); unjust enrichment (Count III); conspiracy (Count IV); and civil RICO (Count V).  (Id.).

Plaintiff's primary allegation against iaedp is that in offering its CEDS board certification, it also requires purchase of a membership in iaedp.  (Dkt. 31, ¶¶ 1-2, 65-67).  She claims that conditioning certification on membership is a "monopoly" and an illegal tying arrangement that violates §§ 1 and 2 of the Sherman Act.  (Id., ¶¶ 65, 72-101).  Although Plaintiff initially summarily characterizes iaedp's CEDS certification as a "monopoly" in the "Eating Disorder Board Certification" market, she later contradicts herself by conceding that iaedp somehow "bypassed" what she calls a "Mental Health Board Certification Market" consisting of the American Board of Professional Psychology ("ABPP") and American Board of Medicine Specialties ("ABMS") whom she admits set the "primary" and "gold standard" for numerous available board certifications in various disciplines practiced by iaedp's psychologist and physician members.  (Id., ¶¶ 1, 21, 60-65, 76).

Just how iaedp could have bypassed a "market" for mental health certification and gained a monopoly in what she claims is an eating disorder field is never really explained.  In fact, Plaintiff appears to contradict herself once again when she concedes that "eating disorders are a complex medical/mental illness" that require both "medical and mental health practitioners...[to] receive the best education possible."  (Id., ¶¶ 15-16).

7

Additionally, Plaintiff does not and cannot allege that iaedp's CEDS certification is a requirement in any state to practice psychology, psychiatry, or any other type of medicine in the eating disorder field, but rather, asserts that iaedp's certification program lacks "oversight and regulation" and has "undergone a number of questionable changes." (Dkt. 31, ¶¶ 16, 19). Plaintiff also alleges without any factual support that the costs associated with membership and certification lack "any offsetting pro-competitive benefits," but then concedes that to attain certification one must pass an exam and fulfill other "separate study, patient consultation, supervision and demonstrated experience requirements." (Id., ¶¶ 20, 66).

Plaintiff confusingly alleges that by requiring membership in iaedp as a condition for receiving CEDS certification, iaedp has erected "market-wide barriers to entry into something she calls the "Eating Disorder Membership Market;" has caused increased prices in that market and in something she calls the "Eating Disorder Membership Market;" and apparently foreclosed competition in both markets. (Id., ¶¶ 72-73, 79). However, Plaintiff pleads no facts regarding who comprises this purported undefined "Eating Disorder Membership Market, nor does she provide any details or examples of her or any other participant's entry into, or exit from, this so-called market, if or how competition in it has been stifled, or to what degree. (Id.).

Plaintiff fails to allege, even in conclusory fashion, that she herself has foregone purchasing a membership in another membership organization. Instead, she only contends that the purchase of iaedp memberships that are allegedly "tied" to obtaining certifications are completely unwanted – *i.e.*, that iaedp membership "has no bearing on, and has no relationship to, [its members'] competency to practice mental health/medical care in a specialty area" and "has no legitimate purpose and does nothing but produce additional revenue for iaedp." (Dkt. 31, ¶¶ 68-69). Plaintiff then seeks recoupment of the fees that she (and the class) has had to pay associated with these

allegedly unnecessary and unwanted memberships.  (Id., ¶¶ 25, 50, 68, 104;) Prayer for Relief, p. 48, ¶ 10).

The remainder of Plaintiff's allegations purport to assert claims for unjust enrichment, conspiracy, and civil RICO violations.  (Dkt. 31, ¶¶ 102-144).  Plaintiff also alleges that iaedp is Harken's "alter ego" and the two are "in substance one and the same." (Id., ¶¶ 90, 146-150). Plaintiff's unjust enrichment claim is merely predicated on the same allegations as Plaintiff's fragile antitrust theory.  (Id., ¶¶ 102-105).  Plaintiff's "conspiracy," count seems to attempt to assert a RICO conspiracy (Id., ¶¶ 107, 117, 119), but is merely riddled with legal conclusions with no facts alleged as to the formation or scope of the alleged "conspiracy" or the extent (if any) of each defendant's participation in it.  Indeed, there are virtually no facts pled against the Board Members in the SAC at all other than a conclusory assertion that each of their job duties involved "reviewing and/or signing Annual Reports for the iaedp corporate [local] chapters" and that they had "actual knowledge that each 'independent' iaedp corporate chapter had the same board of directors and were completely subservient to [Harken's] whims and demands as well as [those] of her co-conspirators." (Id., ¶¶ 108-111).

As to Harken, against whom most of the "conspiracy" and other allegations in the SAC are made, Plaintiff confusingly and generally claims that Harken attempted to funnel revenue to herself from iaedp and thereby reduce costs "by employing key employees as independent contractors," "failing to pay taxes in California," and "allowing iaedp to become not in good standing in California." (Dkt. 31, ¶¶ 112-115).  Plaintiff further vaguely contends that "[t]he purpose of the conspiracy was to "cover up and hide Harken's agenda of prioritizing revenue for herself while presenting on the surface, a reputable eating disorder organization."  (Id., ¶ 112).

9

For her civil RICO claim, Plaintiff generally alleges that Harken, the Board Members, and iaedp, "associated together to commit several criminal acts," including mail fraud, wire fraud, and various other alleged violations of Texas state law.  (Dkt. 31, ¶ 138; *see also*, ¶¶ 126-137).  Plaintiff again asserts in conclusory fashion that all defendants engaged in some sort of "scheme to defraud" by "operating iaedp as a single enterprise and its rights, obligations, employees, contractors, agents, and assets were routinely commingled and transferred and utilized by Harken."  (Id., ¶ 118).  However, evidently unable to decide on what the precise nature of her claim should be, Plaintiff then inconsistently disavows any "conspiracy" by alleging that Harken exercised "iron fisted" control over iaedp's operations, (Id., ¶ 38).

The specifics of the various defendants' alleged illegal activity are never pled.  All that can be gleaned from the SAC's repetitive conclusory allegations  of "fraud" is that Plaintiff appears to be complaining that "iaedp maintained a façade of being an eating disorder research organization which embraced evidence-based, medical, and mental health treatment for eating disorders" and that Harken solicited and diverted undescribed money for herself by requiring "in-person attendance mandatory for board certification" at iaedp's annual symposium, which is "its largest money maker."  (Dkt. 31, ¶ 129).

## **ARGUMENT**

## I.   **PLAINTIFF'S CLAIMS AGAINST IAEDP AND THE BOARD MEMBERS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant.  *Cunningham v. CBC Conglomerate LLC*, 359 F.Supp.3d 471, 476 (E.D. Tex. 2019).  The party seeking to assert personal jurisdiction bears the burden of demonstrating through specific facts that such jurisdiction exists.  *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002).  If the defendant supports his motion to

dismiss with affidavits, the plaintiff may not stand on his pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Watkins v. Gateway First Bank*, 2021 U.S. Dist. LEXIS 84312, *14 (N.D. Tex.). The plaintiff must establish jurisdiction for each claim asserted against each defendant. *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022).

Where, as here, the Court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction exists "if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged, and the court need only determine whether exercising personal jurisdiction violates constitutional due process. *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019). Texas is such a state. *Id*.

In a class action, it is only the named plaintiff -- not the unnamed nonresident members -- that are relevant to the personal jurisdiction inquiry. *See*, *Cedarview Mart, LLC v. State Auto Prop. & Cas. Co.*, 2021 U.S. Dist. LEXIS 60871, *11 (N.D. Miss.); *see also*, *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250-51 (5th Cir. 2020) (unnamed putative class members are not before the court unless or until it certifies a class). Personal jurisdiction can be either general or specific, depending upon the nature of the contacts defendant has with the forum state. *Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). In some instances where subject matter jurisdiction is predicated upon federal question, Congress has provided special federal rules for establishing personal jurisdiction under the federal statute itself.

*See*, *Ramzan v. GDS Holdings, Ltd.*, 2019 U.S. Dist. LEXIS 168156, \*9 (E.D. Tex.).  Personal

jurisdiction does not exist over iaedp and the Board Members in Texas under any of these theories.

A.      **The Court Lacks Personal Jurisdiction Over Plaintiff's Antitrust Claims Under The Clayton Act's Nationwide Service Of Process Provision.**

Personal jurisdiction over antitrust claims brought under the Sherman Act are analyzed

under § 12 of the Clayton Act's nationwide service of process provision.  *Access Telecomms., Inc.*

*v. MCI Telecomms. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999).  Section 12 states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may
> be brought not only in the judicial district whereof it is an inhabitant, but also in
> any district wherein it may be found or transacts business; and all process in such
> cases may be served in the district of which it is an inhabitant, or wherever it may
> be found.  15 U.S.C. § 22.

Section 12 consists of two separate clauses – the first relating to venue and the second concerning

service of process, and therefore, personal jurisdiction.  *Corr Wireless Communs. v. AT&T, Inc.*

*LLC*, 907 F.Supp.2d 793, 796 (N.D. Miss. 2012).  Siding with the Second, Seventh, and D.C.

Circuits, federal courts in Texas have held that a plaintiff cannot apply the "nationwide contacts"

approach to the issue of personal jurisdiction over a defendant unless plaintiff first establishes

under § 12 that venue is proper in the district where suit has been filed.  *Ramzan*, 2019 U.S. Dist.

LEXIS 168156 at \*11 (characterizing this analysis as the "majority approach").

Accordingly, for personal jurisdiction to exist under § 12 of the Clayton Act, Plaintiff must

establish that iaedp: (a) inhabits this district, (b) is "found" in this district, or (c) "transacts

business" here.  *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F.Supp.2d 520, 532 (N.D. Tex.

2001).[3]  Being an "inhabitant" of a district means incorporated under the laws of that jurisdiction,

---

[3]In addition to conducting an analysis of personal jurisdiction under § 12 of the Clayton Act, the *Mgmt. Insights* court
undertook a traditional "minimum contacts" analysis of personal jurisdiction as well.  *See*, *Mgmt. Insights*, 194
F.Supp.2d at 524.  To the extent the Court deems this necessary for Plaintiff's antitrust claims, none of the defendants,
including iaedp, have minimum contacts with the State of Texas for the reasons set forth in § I.B of this brief, *infra*.

while being "found" in a district is generally equated with "doing business" there and requires greater contacts than does "transacting business." *Id.* In addition, "courts have found that a corporation transacts business within their forum jurisdictions only when a *substantial* business activity is performed within the jurisdiction with continuity of character, regularity, contemporaneous with the service and not looking toward cessation of business." *Id.* at 532-33 (emphasis added); *see also, Dale v. Deutsch Telekom AG*, 2023 U.S. Dist. LEXIS 196872, *9 (N.D. Ill) (transacting business under § 12 business must be of a "substantial character").

Iaedp is not an "inhabitant" of Texas since it is a California corporation headquartered in Illinois. (A.1, ¶ 3). It also cannot be said to transact business in the Northern District of Texas, or anywhere in the State of Texas for that matter. It does not have any offices in Texas, own or rent any real estate in Texas, or have any bank accounts in Texas. (A.9, ¶¶ 16-17). Indeed, the *only* contact iaedp is alleged to have with Northern District of Texas is the existence of a separate local chapter in the Dallas/Fort Worth area and that a small portion of iaedp's national membership may be located in the Northern District of Texas. (Dkt. 31, ¶ 12). However, this does not even come close to qualifying as business of a "substantial character" in Texas. For starters, it is disingenuous that Plaintiff even raises the existence of a Texas local chapter. In pre-suit messages sent to various persons in the eating disorder community (including various local chapters), Plaintiff's counsel represented in no uncertain terms that "local chapters are not involved in the lawsuit at all" and "he cannot think of a circumstance in which the local chapters will be included." (*See*, S. Dunn Messages at A.18-A.21).

Regardless, each local chapter, including the Dallas/FW Local Chapter, is separately incorporated from iaedp, exists as a separate entity from iaedp, offers their own events and continuing education programs separate from iaedp, and has their own their own separate bylaws.

13

(A.2, ¶¶ 7-8, 11).  Further, and contrary to Plaintiff's assertions, neither Jahraus, Cabrera, nor Carson are even *members* of a Texas local chapter, much less serve as members of a Texas local chapter board of directors.  (A.2, A.8, A.13, ¶ 10; *see also*, https:////www.iaedp.com/chapter).  In fact, Jahraus and Carson are not members of *any* local chapter as membership in a local chapter is not required for membership in iaedp.  (A.2, A.3, ¶¶ 9, 10).  The reality is that only *one* of iaedp's sixteen board members, Susan Mengden, even lives in Texas.  (A.8, ¶¶ 12, 13).  Ms. Mengden lives in San Antonio, Texas (which is outside the Northern District of Texas) and is a board member of the San Antonio local chapter.  (Id.). A single iaedp board member's residency in San Antonio and service on the board of a separately existing and independent San Antonio local chapter is insufficient to establish that iaedp transacts business in Texas.  *See*, *Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*, 2021 U.S. Dist. LEXIS 101038, *14 (D. Vt.).

As the local chapters are wholly separate organizations from iaedp itself, the presence of a chapter in Dallas cannot provide the basis for personal jurisdiction.  *Diagnostic Affiliates of NE Hou, LLC v. United Health Grp., Inc.*, 2022 U.S. Dist. LEXIS 14130, *9 (S.D. Tex.) (mere existence of a parent-subsidiary relationship does not support the assertion of jurisdiction over a foreign parent); *Ross v. Runyon*, 156 F.R.D. 150, 153 (S.D. Tex. 1994) (service on local union chapter cannot establish personal jurisdiction over union parent).  Indeed, courts have specifically held that a foreign parent does not transact business in the forum state under § 12 of the Clayton Act merely because a subsidiary happens to transact business there.  *See*, *Dale*, 2023 U.S. Dist. LEXIS 196872 at *11 (citing cases).  This is especially true where, as here, the subsidiary (i.e., local chapter) is not alleged to have been involved in any anticompetitive conduct.[4]  *Id.*

---

[4] Neither the Dallas/FW Local Chapter nor any other local chapter is alleged, nor could it be alleged, to have offered the board certifications at issue in this lawsuit.  Again, certifications are obtained through iaedp.  (A.10, ¶ 22; Dkt. 35-1, p. 16, ¶¶ 4-6).

Additionally, iaedp's only connection with Texas is that a small percentage of its members reside there.  (A.8-A.9, ¶ 15.)  Only 4½% of that membership is from the Northern District of Texas, and only 6% its membership is from the entire state.  (Id., ¶¶ 14-15).  Courts from the Fifth Circuit and around the country have held that a national membership organization does not transact business of a substantial character in a judicial district merely because it has members in the district to whom it makes membership materials available.  *See*, *Golf City, Inc. v. Wilson Sporting Goods, Inc.*, 555 F.2d 426, 436-38 (5th Cir. 1977); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 429-30 (2d Cir. 2005); *Shat Acres*, 2021 U.S. Dist. LEXIS 101038 at *11; *Sanderson v. Spectrum Labs*, Inc., 227 F.Supp.2d 1001, 1013 (N.D. Ind. 2000).  For all of these reasons, the Court lacks jurisdiction over Plaintiff's antitrust claims against iaedp.[5]

### B.   The Court Lacks Personal Jurisdiction Over Plaintiff's Civil RICO And RICO Conspiracy Claims Under RICO's Nationwide Service Of Process Provision.

Like the Clayton Act, RICO contains its own nationwide service of process provision.  18 U.S.C. § 1965.  Courts in this Circuit have interpreted § 1965(b) to confer nationwide jurisdiction in a RICO action over nonresident defendants only if the plaintiff can establish personal jurisdiction over at least one defendant under § 1965(a).  *Domain Prot. LLC v. Keating*, 2016 U.S. Dist. LEXIS 135093, *7 (N.D. Tex.).  This requires a traditional minimum contacts analysis as to each defendant.  *Id.*  Assuming jurisdiction can be established over one of the RICO defendants, the court then must engage in an analysis as to whether the exercise of jurisdiction would serve the "ends of justice."  *Flores v. Koster*, 2013 U.S. Dist. LEXIS 92042, *15 (N.D. Tex.).

---

[5] Plaintiff's Sherman Act allegations in Counts I and II are quite vague but appear to be only directed at iaedp (and perhaps Harken under an "alter ego" theory), which makes sense as it is iaedp, not any individual (including the individual Board Members), that offers board certifications to its members as an allegedly "tying" product. Regardless, even it is Plaintiff's position that the Board Members are named in Counts I and II, there are hardly any facts pled in the SAC against the Board Members at all.  And, as their Declarations establish, they have *no contacts* with Texas that could serve as a basis for the Court to exercise jurisdiction over them, much less that they "transact business of a substantial character" in Texas. (A.1-A.17).

### 1.     This court lacks general jurisdiction.

General jurisdiction exists only when the defendant's contacts with the forum state are so "continuous and systematic as to render them at home in the forum state." *Goodyear Dunlop Tires Oper., S.A. v. Brown*, 564 U.S. 915, 919 (2011). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp*, 523 F.3d 602, 609 (5th Cir. 2008). Random, fortuitous, or attenuated contacts are not sufficient to establish general jurisdiction. *Id*. at 610. Indeed, "even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Id*. at 609.

For purposes of general jurisdiction, a corporate defendant is considered "at home" in the state of its corporation and the state in which its principal place of business is located. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Fifth Circuit has recognized that "it has become incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020). Iaedp is non-profit California corporation with its principal place of business in Pekin, Illinois (A.1, ¶ 3), and thus, is at home in California and Illinois. It is not "at home" in Texas.

Further, and as previously discussed, the fact that iaedp has a small percentage of its membership in Texas and that there is a separately incorporated local chapter in Dallas/Fort Worth is not sufficient to establish that iaedp engages in "continuous and systematic contacts" in Texas. *See*, *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 560 (5th Cir. 2013) (finding no general jurisdiction in Texas even though defendants transacted limited and discrete business there over an appreciable period). Plaintiff's remaining vague and overgeneralized assertions against

16

iaedp that give no indication as to the extent, duration, or frequency of iaedp's contacts with Texas are also insufficient to support general jurisdiction. *Cunningham*, 359 F.Supp.3d at 478.

The Board Members also lack any contacts with Texas that would give rise to general jurisdiction over them.[6]  An individual is considered "at home" where he or she is domiciled. *Daimler*, 571 U.S. at 127.  Here, Jahraus is domiciled in Naples, Florida; Cabrera in Anthem, Arizona; and Carson in Huntsville, Alabama.  (Exs. A.1, A.7, A.12, ¶ 1).  Therefore, none of them are "at home" in Texas.  Indeed, the SAC hardly makes any allegations against the Board Members at all other than the mistaken assertion that they serve on the board of the Dallas/FW Local Chapter, which is not only untrue, but irrelevant, since local chapters are separately existing entities from iaedp. (A.2, ¶ 6).  Further, the only sporadic visits any of the Board Members have even made to Texas were in the course of their employment for *separate* companies, not visits associated with iaedp business.  (A.3-A.4, ¶¶ 20-24, 30; A.9-A.10, ¶¶ 20-21, 27; A.14-A.15, ¶¶ 19-22, 28).  Such visits do not establish general jurisdiction over the Board Members pursuant to the fiduciary-shield doctrine.  *Conveyor Aggregate Prods. Corp. v. Benitez*, 2019 U.S. Dist. LEXIS 74559, *15-16 (W.D. Tex.).  Similarly, Jahraus' holding a medical license in Texas (in addition to 19 other states) is not a sufficient contact to subject him to general jurisdiction, especially when he sees no patients or practices any medicine in Texas (A.3, ¶ 20).  *See*, *Hostettler v. Bigelsen*, 1992 U.S. Dist. LEXIS 4650, *8 (D.N.J.).

### 2.	This court lacks specific jurisdiction.

For specific jurisdiction to exist, the suit must arise out of or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb Co.*, 582 U.S. at 262.  "In other words, there must

---

[6]Harken has separately moved for a transfer of this case because the court lacks personal jurisdiction over her, and venue is improper.  (Dkt. 34).  Those arguments are adopted and incorporated herein, and thus, Harken's arguments will not be repeated when discussing iaedp's and the Board Members' lack of minimum contacts with the State of Texas.

be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation." *Id*. The Fifth Circuit has established the following three-part test for the exercise specific personal jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).

The purposeful availment prong requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 254 (1958). The focus is on "the defendant's conduct and connection with the forum state" insofar as a defendant would "reasonably anticipate" the state in which that defendant may be "haled into court." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Here, there is nothing to suggest that iaedp, the Board Members, or Harken has purposely availed themselves of Texas law. Indeed, an out-of-state plaintiff simply cannot acquire specific jurisdiction over an out-of-state defendant when the out-of-state plaintiff's claim did not arise out of any activity in the forum state. *Bristol-Myers Squibb*, 582 U.S at 264-65.

*Bristol-Meyers Squibb* applies to *named* plaintiffs purporting to bring claims on behalf of a putative class. *See*, *Kinney v. IBM*, 2021 U.S. Dist. LEXIS 267017, *14 (W.D. Tex.). Here, Plaintiff, a Connecticut resident who maintains her psychology practice in Connecticut, does not allege that *any* of the defendants' activity giving rise to *her* claims occurred in Texas. Rather, as a Connecticut resident and business owner, she claims she applied to iaedp located in Illinois to receive a CEDS certification allegedly conditioned upon her also purchasing a membership from

iaedp, both of which, were issued to Plaintiff in Connecticut by iaedp from Illinois where it is located. This purported tying arrangement and "scheme to defraud" not only did not take place in Texas, but it bears no connection to Texas at all.

Even if Plaintiff had some undisclosed contacts with Texas (and the SAC does not indicate that she does) her own contacts with the forum cannot be used to demonstrate contacts by the defendants. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Rather, whether specific jurisdiction can be properly asserted over a non-resident defendant is dependent on "the relationship among the defendant, the forum, and the litigation." *Id*. at 283-84. Such activity or occurrence must "create a substantial connection with the forum State." *Id*. at 284. Where, as here, that substantial connection is lacking, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 582 U.S at 264.

Finally, even if minimum contacts existed, it would be unreasonable to exercise personal jurisdiction in Texas. *See, e.g., SeaTrepid La., LLC v. Richard Phillips Marine, Inc.*, 2009 U.S. Dist. LEXIS 46274, *19-20 (E.D. La.). The defendants may prove jurisdiction is unfair based on these factors: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Plaintiff has no interest in obtaining relief in Texas as a Connecticut resident, and Texas has no such interest in this dispute as iaedp and all the defendants are non-residents of Texas and have virtually *no* contacts with Texas. (Dkt. 11, ¶ 7; Dkt. 14-2, p.2; A.1-A.17). It would also violate notions of fair play and substantial justice to hale defendants into a Texas court instead of adjudicating this

dispute in Illinois where iaedp and its Managing Director reside, and certification and memberships are issued.

### 3.   Should the court need to address the issue, the exercise of personal jurisdiction in Texas would not serve the "ends of justice."

Because no defendant in this case is subject to personal jurisdiction and venue in the Northern District of Texas, there is no need for the Court to undertake the second part of the analysis as to whether exercise of jurisdiction would serve the "ends of justice." *See*, *Graceland v. Plutus Enters. LLC*, 2022 U.S. Dist. LEXIS 75016, *16-17 (M.D. Fla.) (citing cases). However, should the Court address the issue, it should find the "ends of justice" are not served by the exercise of jurisdiction in this case.

The precise meaning of "ends of justice" is "unresolved in the Fifth Circuit." *Energium Health v. Gabali*, 2023 U.S. Dist. LEXIS 169564, *13 (N.D. Tex.). "Some courts hold that plaintiffs must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Id*. "Others interpret the phrase broadly in light of the congressional directive to liberally construe RICO to effectuate its remedial purposes." *Id*. In undertaking the "ends of justice" analysis, some courts have considered the location of the parties, witnesses, records, and acts giving rise to the claim; judicial economy; and if there is an alternate forum where venue is proper. *Crenshaw v. Antokol*, 287 F.Supp.2d 37, 42, 44 (D.D.C. 2003).

Again, *none* of the defendants reside in Texas and *none* of the alleged acts giving rise to Plaintiff's claims occurred in Texas. (A.1, A.7, A.12, ¶¶ 1, 3). Not even the Plaintiff resides in Texas or is alleged to have contacts with Texas. (Dkt. 31, ¶ 5). There are also no witnesses in this case located in Texas (A.5, ¶ 37). and the defendants' ties to Texas (if they exist at all) are negligible. In contrast, from what can be gleaned from Plaintiff's extremely vague allegations in the pleadings, the acts giving rise to Plaintiff's claims appear to have been generated from iaedp's

Pekin, Illinois headquarters and taken place in Illinois; namely, iaedp's issuance of board certification and sale of a membership to Plaintiff and receipt of fees for the same. (Dkt. 31). Iaedp's corporate records are also located in Illinois as is the residency of its Managing Director, Harken. (A-10-A-11, ¶¶ 30-31, 33). The Board Members are barely mentioned in the SAC with only a conclusory reference that they somehow entered into an undefined "conspiracy" with Harken and iaedp to defraud Plaintiff. (Dkt. 31, ¶¶ 13, 93-98, 113). That "conspiracy" is not alleged to have been reached in Texas, but rather, was necessarily allegedly entered into and carried out in Illinois where iaedp and Harken are located. (Id.)

The "ends of justice" are thus served by this case being litigated in Illinois, not Texas. Both iaedp and Harken are certainly subject to general personal jurisdiction in Illinois. Additionally, assuming the Board Members directed their activities into Illinois to enter into a "conspiracy" with Harken and iaedp, they would be subject to specific jurisdiction in the Central District of Illinois. *See, e.g.*, *Eagle Metal Prods., LLC v. Keymark Enters., LLC*, 651 F.Supp.2d 577, 591 (N.D. Tex. 2009). Further, the "ends of justice" are not served under § 1965(b) where, as here, the plaintiff has not presented a colorable RICO claim. *Fernandez-Lopez v. Hernandez*, 2020 U.S. Dist. LEXIS 253510, *25 (W.D. Tex.). A claim is not colorable where it is "wholly insubstantial and frivolous." *Id*. at 26. Importantly, the question of whether a federal claim is "colorable" is not the equivalent of a Rule 12(b)(6) or Rule 9(b) challenge to the pleadings.[7] *Id*. at *25. Rather, a claim is considered "wholly insubstantial and frivolous" either (1) because it is obviously without merit, or (2) because it is clearly foreclosed by previous decisions of the Supreme Court. *Id*.

---

[7]For this reason, iaedp and the Board Members have not at this time brought a Rule 12(b)(6) challenge to the SAC as part of this motion. That is not to say, however, that the claims state a cause of action. In fact, iaedp and the Board Members maintain just the opposite -- that none of Plaintiff's causes of action state a claim for relief. However, because a Rule 12(b)(6) motion does not have to be consolidated with a motion challenging personal jurisdiction and venue (*see*, Fed.R.Civ.P. 12(g)(2), (h)(2), (h)(3)), iaedp and the Board Members reserve the right to bring a Rule 12(b)(6) motion after it is decided where this case should proceed.

At a minimum, the claims against the iaedp and Board Members are "wholly insubstantial" in the instant case since the RICO and conspiracy counts in the SAC are based solely upon a single conclusory assertion that the Board Members assisted in the preparation of iaedp's Articles of Incorporation.  Preparation of such documents can in no way serve as the basis for: (i) a RICO claim which requires proof of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, or (ii) a RICO conspiracy which, in addition to a violation of RICO, requires (1) an agreement between two or more persons to commit a substantive RICO offense and (2) each co-conspirator knew of and agreed to the overall objective of the RICO scheme.  *Vanderbol v. State Farm*, 2020 U.S. Dist. LEXIS 219987, \*20, 37 (E.D. Tex.).  For this reason as well, the Court should decline jurisdiction under § 1965(b).  *See, e.g.*, *United States ex rel. Sullivan v. Atrium Med. Corp.*, 2014 U.S. Dist. LEXIS 202473, \*33-34 (S.D. Tex.) (plaintiff's confusing and conclusory allegations failed to carry burden of demonstrating exercising personal jurisdiction served the "ends of justice").

### C.   The Court Lacks Personal Jurisdiction Over Plaintiff's State Law Unjust Enrichment Claim.

Plaintiff's unjust enrichment claim is brought under Texas state law, and there is no special statutory provision that must be consulted to undertake an analysis of personal jurisdiction.  *Crownover v. Crownover*, 2016 U.S. Dist. LEXIS 203425, \*30-35 (W.D. Tex.) (employing traditional minimum contacts analysis in deciding whether personal jurisdiction existed over unjust enrichment claim).  Personal jurisdiction over this claim is lacking under a traditional minimum contacts analysis for the reasons stated above.

II.   **PLAINTIFF'S CLAIMS AGAINST IAEDP AND THE BOARD MEMBERS SHOULD BE DISMISSED, OR ALTERNATIVELY, TRANSFERRED TO THE CENTRAL DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1406(a) BECAUSE VENUE IN THIS DISTRICT IS IMPROPER.**

Federal Rule of Civil Procedure 12(b)(3) allows for dismissal of an action that is filed in an improper venue. *Nat'l Infusion Ctr. Ass'n v. Becerra*, 2024 U.S. Dist. LEXIS 26256, *6 (W.D. Tex.). Just as with the issue of personal jurisdiction, the "law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives." *Henrichs v. Nova Biomedical Corp.*, 2014 U.S. Dist. LEXIS 79275, *5 (S.D. Tex.). When venue is challenged, the plaintiff bears the burden of establishing that venue is proper in the forum state. *Southampton, Ltd. v. Norman*, 2019 U.S. Dist. LEXIS 227279, *18 (N.D. Tex.). Here, venue is improper because, as explained above, the Court does not have personal jurisdiction over any of the defendants. *See, Mayfield v. Hills Bank & Tr. Co.*, 2022 U.S. Dist. LEXIS 170266, *3 (W.D. Tex.).

Venue is also improper because Plaintiff cannot satisfy 28 U.S.C. § 1391(b). Under § 1391(b), venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b).

Venue cannot be proper in the Northern District of Texas under § 1391(b)(1) because no defendant to this action resides there. An individual is deemed to reside where he is domiciled. 28 U.S.C. § 1391(c)(1). A corporate defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c)(2).

23

As previously discussed, neither iaedp, Harken, or any of the Board Members are domiciled in the Northern District of Texas.

For purposes of § 1391(b)(2), a selected district's contacts must be substantial. *McClintock v. Sch. Bd. E. Feliciana Parish*, 299 F. App'x 363, 365 (5th Cir. 2008). "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cont'l W. Ins. Co. v. Liepke Invs.*, 2011 U.S. Dist. LEXIS 171653, *4 (N.D. Tex.). The test focuses on the location of those events or omissions giving rise to the claim. *Southampton, Ltd.*, 2019 U.S. Dist. LEXIS 227279 at *6. Again, *none* of the events giving rise to Plaintiff's claims – i.e., issuance of board certification to a Connecticut resident conditioned upon purchase of iaedp membership – took place in Texas. Accordingly, venue in this district is not proper. *See*, *Davidson v. Grossman*, 2007 U.S. Dist. LEXIS 48544, *6-7 (S.D. Tex.) (venue improper for RICO claim where defendants were only alleged to have defrauded persons in multiple states but not have engaged in any specific conduct giving rise to the suit in Texas).

The final section, § 1391(b)(3), would permit venue in this district only if there is "no district in which the action may otherwise be brought." Again, there is no personal jurisdiction over *any* defendant in this district that would make venue proper. Moreover, and as previously discussed, personal jurisdiction exists in the Central District of Illinois. This lawsuit can, and should have been, brought in the Central District of Illinois as it is where Harken resides and iaedp -- which offers, issues, and maintains the board certifications and memberships at issue -- is headquartered. The Board Members are also alleged (albeit in the most vague and conclusory of terms) of entering into and carrying out a conspiracy in that district.

Where, as here, venue is improper, the court must either dismiss the case or, if "it be in the interests of justice," transfer it to "any district or division in which it could have been brought."

28 U.S.C. § 1406(a).[8]   Dismissal, rather than transfer, is the appropriate relief if the plaintiff's attorney could have reasonably foreseen that jurisdiction and/or venue did not exist in the forum state, but nevertheless, chose to bring suit there anyway.  *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022). That is precisely the case here.  The defendants' glaring lack of contacts with Texas that is self-evident from the SAC were known or should have been known prior to its filing.  Under these circumstances, transfer would not be in the "interest of justice," and dismissal rather than transfer is appropriate.

## III.   EVEN IF VENUE IS PROPER IN THIS DISTRICT, THE COURT SHOULD TRANSFER THE CASE TO THE CENTRAL DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1404(a).

28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Transfer is appropriate under § 1404(a) where: (1) venue and jurisdiction would be proper in the transferee district; and (2) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice.  *Trois v. Apple Tree Auction Ctr., Inc.*, 2018 U.S. Dist. LEXIS 116893, *7-8 (W.D. Tex.).  A transfer may be ordered under § 1404(a) even where personal jurisdiction and venue exist in the transferor court.  *Glazier Grp., Inc. v. Mandalay Corp.*, 2007 U.S. Dist. LEXIS 50184, *41 (S.D. Tex.).[9]  Decisions to transfer venue are committed to the sound discretion of the Court.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008).

---

[8]Similarly, transfer may also occur when the court lacks personal jurisdiction if "the interests of justice weigh in favor of transfer rather than dismissal."  *See, Franco v. Mabe Trucking Co.*, 3 F.4th 788, 796 (5th Cir. 2021) *citing,* 28 U.S.C. § 1631 and 28 U.S.C. § 1406(a).

[9]The Fifth Circuit also permits discretionary transfer under § 1404(a) when personal jurisdiction in the transferor court is lacking.  *Bentz v. Recile*, 778 F.2d 1026, 1027 (5th Cir. 1985).

Transfer of this case to the Central District of Illinois would be appropriate because, as previously discussed, all defendants are subject to personal jurisdiction there and venue is proper as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred there. As a general matter, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen*, 545 F.3d at 315. But a plaintiff's choice of forum is less significant where the action has relatively little relationship to the chosen forum. *In re Horseshoe Entm't.*, 337 F.3d 429, 434-35 (5th Cir. 2003). Moreover, the importance of a plaintiff's choice of forum is further diminished if plaintiff does not maintain a presence in the district at issue. *Mair Holdings, Inc. v. Air Line Pilots Ass'n*, 2007 U.S. Dist. LEXIS 106567, *18-19 (S.D. Tex.).

Further, a plaintiff's choice of forum does not rise to the level of a presumption, it simply impacts the moving party's burden of proof that the transferee venue is more appropriate. *Mair Holdings, Inc.*, 2007 U.S. Dist. LEXIS 106567 at *18. As set forth previously, Plaintiff here is not a resident of Texas. Rather, she lives in Connecticut. (Dkt. 31, ¶ 5). In fact, Plaintiff does not allege a *single* contact she has with the State of Texas, and it is clear that she owns a business in Connecticut and works in that state as a practicing psychologist. (Dkt. 35-1, pp. 2-3). Therefore, her choice of forum is entitled to minimal deference. Regardless, Plaintiff's choice of forum is overcome in the instant case as the Central District of Illinois is clearly the more convenient forum.

In determining the more convenient forum, courts are required to assess four private interest factors and four public interest factors pertinent to a transfer motion. *See*, *In re Volkswagen*, 545 F.3d at 315. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial

of a case easy, expeditious and inexpensive." *Id.*   The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *Id.*   No single factor is of dispositive weight. *Id.*   The Fifth Circuit has found that only three factors can be sufficient to support transfer if the remaining factors are neutral. *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

Addressing the private interest factors first, access to the sources of proof in this case weigh in favor of the Central District of Illinois.  Here, all of iaedp's physical corporate records are maintained at its headquarters in Pekin, Illinois.  (A-10-A11, ¶¶ 30-31).  And, although some of the relevant records are stored electronically, the Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace. *Dataquill, Ltd. v. Apple Inc.*, 2014 U.S. Dist. LEXIS 82410, *8 (W.D. Tex.).  This is not to mention that iaedp's access to its systems which store such information would be at its principal place of business in Illinois, not Texas.  (A.7, ¶ 3; A.9, ¶¶ 16, 17).

Additionally, none of iaedp's corporate records are located in Texas.  (A.11, ¶ 32).  In fact, there are no documents or physical records relating to this case that would be located in the Northern District of Texas as Plaintiff lives in Connecticut and her claims involve a certification and membership she purchased from an Illinois resident.  Thus, the access to sources of proof factor weights in favor of transfer. *See*, *Lozada-Leoni v. Moneygram Int'l, Inc.*, 2019 U.S. Dist. LEXIS 225885, *44-45 (E.D. Tex.) (transfer appropriate where no documents or physical records were located in the transferor district).

Courts have recognized that convenience of key witnesses ranks as among the most important factors considered on a motion to transfer venue. *Bigham v. Envirocare of Utah*, 123 F.Supp.2d 1046, 1050 (S.D. Tex. 2000). And, while courts often focus on the location of non-party witnesses as the most important, the location of party witnesses, particularly a key one, is relevant. *Robertson v. M/V Cape Hunter*, 979 F.Supp. 1105, 1107 (S.D. Tex. 1997); *see also*, *Mair Holdings*, 2007 U.S. Dist. LEXIS 10656 at *15 (holding location of the parties supported transfer). Here, not a single material witness in this case is from Texas, much less the Northern District of Texas. (A.11, ¶ 34). Harken, in contrast, resides in Pekin, Illinois, where she also primarily conducts business as iaedp's Managing Director. (Dkt. 35-1, p. 17, ¶¶ 9, 10). She is likely to be the primary witness in this case. According to Plaintiff, Harken maintains "iron fisted control" over iaedp and is in sole control of the organization's policies and operations. (Dkt. 31, ¶¶ 38).

Harken rarely travels to Texas. (Dkt. 35-1, p. 17, ¶ 12). The expense for her to travel to the Northern District of Texas for trial in this case, not to mention the expense of moving physical records there obviously greatly outweighs what that would be in the Central District of Illinois. (Id., p. 18, ¶ 15). Although the Board Members do not live in Illinois, it would be less of a hardship for them for a trial to take place in the district of iaedp's corporate headquarters where access of to documents and company resources are more easily obtained. (A.5, ¶¶ 38-39; A.11, ¶¶ 35-36; A.16, ¶¶ 36-37). Correspondingly, there is no significant difference for Plaintiff to travel from Connecticut to the Central District of Illinois as opposed to the Northern District of Texas. In the end, the location of the witnesses, cost of attendance, and other practical problems making trial easy weigh in favor of transfer.

The public interest factors also favor transfer, especially the interest in having localized interests decided at home. *See*, *Groesbeck v. Bumbo*, 2013 U.S. Dist. LEXIS 86973, *13 (S.D.

Tex.).  Illinois clearly has a greater interest than Texas in hearing this case which involves the actions of a company headquartered there (iaedp) and one of its residents (Harken).  The actions complained of also are of intertest to Illinois court because the concern iaedp's issuance of board certifications and sale of membership from Illinois as well as its business operations.  Texas, in contrast, has *no* interest in presiding over this case.  Indeed, if a Texas jury was to hear the case, it would likely be left to wonder why it is being called upon to decide a dispute between a Connecticut resident and Illinois resident over certifications issued and corporate operations conducted in Illinois.  *Id*.

The next factor -- familiarity with the law that will govern the case – also slightly favors transfer.  Most of the claims in this case are federal statutory claims which both this Court and the Central District of Illinois deal with frequently.  Plaintiff does have a pendent state law claim for unjust enrichment, however, and where a federal court is exercising supplemental jurisdiction over state-law claims, it applies the choice-of-law rules of the forum state to the state-law claims.  *Energium Health v. Gabali*, 2022 U.S. Dist. LEXIS 204474, *58 (N.D. Tex.).  Texas conflict of law rules for unjust enrichment claims look to (1) the place where the parties' relationship was centered; (2) the place where defendant received the benefit or enrichment; (3) the location where the act conferring the enrichment or benefit was done; (4) the parties' domicile or place of business; and (5) the jurisdiction where a physical thing substantially related to the enrichment was situated at the time of the enrichment.  *Taylor v. Cmty. Bankers Sec., LLC*, 2013 U.S. Dist. LEXIS 86485, *21 (S.D. Tex.).  In applying this analysis, courts focus less on the place of the alleged injury and more on where the place where the enrichment originated, which here, is Illinois.  *Id*.  While this court is certainly capable of applying Illinois law, this factor further emphasizes this case's complete lack of connection with Texas.

29

The remaining factors are relatively neutral.  There do not appear to be conflict of law problems.  As to court congestion, the Central District of Illinois is a less congested forum, but cases in the Northern District of Texas proceed faster to trial (www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/12/31-1) making this factor neutral as well.  *See*, *Groesbeck*, 2013 U.S. Dist. LEXIS 86973 at *14.  When viewed as a whole, however, the private or public interest factors greatly weigh in favor of transfer to Illinois.  In fact, *not one* of these factors weighs against transfer of this case.  Accordingly, should the Court decide not to dismiss the case for lack of personal jurisdiction or improper venue, it should transfer this case to the Central District of Illinois.

## <u>CONCLUSION</u>

This case simply has no connection to Texas.  As a result, the Court should dismiss Plaintiff's Second Amended Complaint against iaedp and the Board Members for lack of personal jurisdiction and/or improper venue, or alternatively, transfer this case to the United States District Court for the Central District of Illinois.

Respectfully submitted,

/s/ *William N. Radford*

| | |
|---|---|
| James J. Sipchen (*admitted pro hac vice*) | William N. Radford – Texas Bar No. 16455200 |
| John H. Scheid, Jr. (*admitted pro hac vice*) | Carson J. Henderson |
| Pretzel & Stouffer, Chartered | Thompson, Coe, Cousins & Irons, L.L.P. |
| 200 S. Wacker Drive, Suite 2600 | 700 N. Pearl Street, 25th Floor |
| Chicago, Illinois 60606 | Dallas, Texas 75201 |
| Telephone: (312) 578-7422 | Telephone: (214) 871-8200 |
| Facsimile: (312) 346-8242 | Facsimile: (214) 871-8209 |
| jsipchen@pretzel-stouffer.com | wradford@thompsoncoe.com |
| | chenderson@thompsoncoe.com |

*Attorneys for Defendants International Association of Eating Disorder Professionals' Foundation, Inc., Joel Jahraus, Dena Cabrera, and Ralph Carson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

James J. Sipchen         
*James J. Sipchen*
